Argued and submitted April 19, affirmed June 19, 1991

Douglas CAMPBELL,
N. Robert Stoll, Helen Stoll, Norman Stoll,
William Naito, Richard Hutchison, Susan Hutchison,
Benjamin Shoop, Elyse Shoop, Phillip Artz,
William Able, Stevan Oswill, Brian McCabe,
Barre Thomas, Marjorie Maletsky, Heidi Fox,
Gerald Fox, Wendy Hamilton, David Hamilton,
Robert Steward, Laura Walker, Ellen Everson,
Richard Durrett and Kenneth Underdahl,
*Appellants,*

*v.*

THE BOARD OF COUNTY COMMISSIONERS
OF MULTNOMAH COUNTY,
Robert N. Magid and Judith K. Magid,
*Respondents.*

(A8910-06371; CA A63424)

813 P2d 1074

Paul R. Duden, Portland, argued the cause and filed the briefs for appellants. With him on the briefs was Tooze Shenker Holloway & Duden, Portland.

John L. DuBay, Chief Assistant County Counsel, Portland, argued the cause and filed the brief for respondent Board of Commissioners of Multnomah County.

Mark A. Turner, Portland, argued the cause for respondents Robert N. and Judith K. Magid. With him on the brief was Ater Wynne Hewitt Dodson & Skerritt, Portland.

Before Buttler, Presiding Judge, and Edmonds and De Muniz, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiffs brought this mandamus action, seeking to compel defendant county to deny defendants Magids' (applicants) pending application for a residential building permit. The trial court denied relief and dismissed the action. Plaintiffs appeal, and we affirm.

In 1984, applicants purchased a parcel of land consisting of four platted subdivision lots, each having an area of 5,000 square feet, on which there was a house that occupied two of the lots. The property is in a subdivision that is in a zone with a 20,000 square foot minimum lot size for residential development. The subdivision was platted before the county adopted the zoning ordinance with that minimum lot size requirement, but the area requirement was in effect when applicants acquired the property. In 1989, applicants sold the two platted lots on which the house is located. They then applied for a building permit to construct a new house on the remaining 10,000 square feet of the property.

Before the county acted to approve or deny the permit, plaintiffs brought this action. The dispute between the parties focuses, *inter alia*,[1] on whether a house is permitted on the now subsize parcel. Section 11.15.2856(B) of the county zoning ordinance, the exception or "grandfather clause" for the zone, provides:

"Where a lot has been a deed of record of less than 80 feet in width, or an area of less than 20,000 square feet, and was held under separate ownership, or was on public record at the time this Chapter became effective, such lot may be occupied by any use permitted in this district. In no case, however, shall a dwelling unit have a lot area of less than 3,000 square feet."

The term "lot" is defined in section 11.15.0010 of the ordinance as

"a plot, parcel or area of land owned by or under the lawful control of and in the lawful possession of one distinct ownership."

---

[1] There are other issues, but our disposition of the case makes it unnecessary to address them.

Plaintiffs read the definition and the grandfather clause together to mean that a dwelling may not be constructed on applicants' property. They contend that the entire 20,000 square foot parcel was a single deeded "lot" in single ownership at the time that applicants purchased it and that the grandfather clause does not apply separately to the two platted lots that applicants retained. They also argue, in effect, that the grandfather clause should not be construed to allow residential development on a parcel that was rendered substandard by the act of its owners long after the zoning requirements took effect. Defendants maintain that the word "lot" in the grandfather clause applies to each of the 5,000 square foot platted lots and that they were "on public record" before the area was zoned. Plaintiffs rejoin that the definition of "lot" in the ordinance makes no reference to plats, but focuses instead on a unit of land that is in single ownership.

The trial court heard the parties' arguments and the testimony of county planning department personnel that the grandfather clause, and similar provisions in the ordinance, have been applied historically in the way that defendants contend that this clause should be. It concluded that,

"while the ordinance could be interpreted as asserted by Plaintiffs, Defendant County's application of the ordinance to the contrary has been substantially consistent. In the absence of proof that County's interpretation is contrary to the express language and intent of the ordinance, this Court should not substitute its views [for] those of the County."

Plaintiffs' assignment of error is directed at that conclusion.

Although the parties do not raise it, the threshold question is whether the circuit court had jurisdiction over the action and authority to decide the issues presented, or whether this is a controversy that is subject to the exclusive land use decision and appeals process. This case involves an application for a building permit. Under ORS 197.015(10) and ORS 197.825, "land use decisions" are defined, and exclusive jurisdiction to review them is vested in LUBA, subject to this court's review of LUBA's decisions. However, ORS 197.015(10)(b)(C) excepts from the definition of "land use decision" a local government's decision

"[w]hich approves or denies a building permit under land use

*standards which do not require interpretation or the exercise of factual, policy or legal judgment."* (Emphasis supplied.)

ORS 197.825(3)(a), in turn, creates a corresponding exception to LUBA's jurisdiction and confers authority on the circuit courts

"[t]o grant declaratory, injunctive or mandatory relief in proceedings arising from decisions described in ORS 197.015(10)(b)."

ORS 197.015(10)(b)(C) was amended to its present form by Oregon Laws 1989, chapter 761, section 1. The amended statute parallels our interpretation of its predecessor in *Doughton v. Douglas County,* 82 Or App 444, 728 P2d 887 (1986), *rev den* 303 Or 74 (1987). We concluded there that local proceedings on a building permit did not come within the exception to the definition of "land use decision" or to LUBA's jurisdiction, if the standards for granting or denying the permit required the exercise of "any significant factual or legal judgment." 82 Or App at 449; *see also Doughton v. Douglas County,* 90 Or App 49, 750 P2d 1174 (1988); *Bell v. Klamath Co.,* 77 Or App 131, 711 P2d 209 (1985).

We also noted later in the *Doughton* case that "the statute contemplates no overlap in the subjects over which the circuit court and LUBA have jurisdiction." 90 Or App at 52. We concluded that, because the issues relating to the building permit there were reviewable by LUBA, they could not be raised in a circuit court proceeding. 90 Or App at 52.

This case differs somewhat, because plaintiffs brought the mandamus action before the county made a decision that could be appealed to LUBA. However, that fact does not alter the jurisdictional inquiry. By their terms, the statutes limit circuit court authority to cases in which the standards for allowing a permit require no interpretation or judgment. The parties may not expand that authority simply by electing to go to circuit court instead of through the land use decision and appeals process. As we said recently in *Sauvie Island Agricultural v. GGS (Hawaii), Inc.,* 107 Or App 1, 6, 810 P2d 856 (1991), a party may not, under the guise of a circuit court enforcement proceeding, ask "the court to make a land use decision."

In sum, under ORS 197.015(10)(b)(C) and ORS

197.825(3)(a), circuit court authority ends and the exclusive land use decisional process begins at the point where the granting or denial of a permit involves the exercise of judgment or the interpretation of an ordinance, rather than the mere ministerial application of an ordinance that requires no interpretation or judgment. The ordinance provisions in question here do require interpretation before they may be applied.

At oral argument, the parties suggested, in response to our question, that the circuit court had jurisdiction under ORS 215.185(1):

"In case a building or other structure is, or is proposed to be, located, constructed, maintained, repaired, altered, or used, or any land is, or is proposed to be, used, in violation of an ordinance or regulation designed to implement a comprehensive plan, the governing body of the county or a person whose interest in real property in the county is or may be affected by the violation, may, in addition to other remedies provided by law, institute injunction, mandamus, abatement, or other appropriate proceedings to prevent, temporarily or permanently enjoin, abate, or remove the unlawful location, construction, maintenance, repair, alteration, or use. When a temporary restraining order is granted in a suit instituted by a person who is not exempt from furnishing bonds or undertakings under ORS 22.010, the person shall furnish undertaking as provided in ORCP 82A(1)."

In *Mehring v. Arpke,* 65 Or App 747, 672 P2d 382 (1983), *rev den* 296 Or 411 (1984), the plaintiffs brought an action under that statute to enjoin a condominium development project that had received county approval before the zoning regulations were amended in a manner that precluded the development. The trial court dismissed the action on the ground that it lacked subject matter jurisdiction. We agreed and explained:

"In enacting Or Laws 1979, ch 772, establishing LUBA, the legislature intended to furnish review of land use decisions in LUBA, rather than the circuit courts, both for the sake of consistency and to expedite the process. *League of Women Voters v. Washington County,* 56 Or App 217, 221, 641 P2d 608 (1982). ORS 215.185 has been in effect since 1955. Before the creation of LUBA, it might well have been applicable to the facts of this case. However, in view of the

exclusive jurisdiction of LUBA over land use decisions, whatever continued application it may have, it cannot apply to this case. As the trial court pointed out, the ultimate result of allowing plaintiffs to use an action under ORS 215.185 to review defendants' site plan approval a year after it was granted would be that any person not satisfied with a land use decision by a local governing body could make a similar allegation and litigate the matter in circuit court. That clearly was not the intent of the legislature. It intended that review of land use decisions be expedited in a single forum having exclusive jurisdiction." 65 Or App at 751.

*See also Wright v. KECH-TV,* 300 Or 139, 147, 707 P2d 1232 (1985), *cert den* 476 US 1117 (1986); *City of Oregon City v. Mill-Maple Properties, Inc.,* 98 Or App 238, 243 n 2, 779 P2d 172 (1989).

■    In this case, unlike the cited ones, the local government had not yet made a land use decision when the action was brought. The principle stated in *Mehring* is nevertheless decisive. To read ORS 215.185 to make the circuit court an available forum is no less inconsistent with the land use statutes if a party brings an action before a land use decision has been made rather than after, when, as here, a permit application is pending that, in the normal course, must culminate in a land use decision that would be subject to the exclusive LUBA appeal process. We said in *City of Oregon City v. Mill-Maple Properties, Inc., supra,* 98 Or App at 242, that ORS 197.825(3)(a) is not "an election of remedies statute." Neither is ORS 215.185.

■    The parties' arguments about the reasonableness of the county's interpretation (as reflected in its arguments here and in its evidence about how it has applied the ordinance), the deference that the courts should afford that interpretation and the significance of the evidence of past enforcement practices are not relevant to any issues that we may decide in this appeal. All of those arguments pertain to how the ordinance should be interpreted, and interpretation is not permissible in this case. It is beyond the circuit court's power. Interpretation of the ordinance by us is possible only if our review is sought after a decision by LUBA. The trial court was

correct, albeit for different reasons, in denying the relief sought and in dismissing the writ.[2]

Affirmed.

---

[2] Technically, the court had jurisdiction over the case as pleaded, because it had to review the ordinance to determine whether it contained standards of the kind described in ORS 197.015(10)(b)(C). However, the ordinance revealed on its face that its standards were not of that kind, and the court had no further authority to act or to grant relief.