Argued and submitted November 17, 1995, affirmed August 7, 1996

Matt DONEY
and Darrell Dyer,
*Respondents,*

*v.*

CLATSOP COUNTY
and Randy Trevillian,
*Appellants.*

(93-2126; CA A84134)

921 P2d 1346

Peter R. Mersereau argued the cause for appellants. With him on the briefs was Mersereau & Shannon.

Stephen F. Crew argued the cause for respondents. With him on the brief was O'Donnell Ramis Crew Corrigan & Bachrach.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

█    Plaintiffs brought this action for mandamus and other relief arising from the refusal by defendants Clatsop County and its roadmaster (collectively "county") to issue a road access permit to plaintiffs pursuant to ORS 374.305 *et seq*. The trial court entered an ORCP 67 B judgment on the mandamus claim, directing the issuance of a peremptory writ. The county appeals, and we affirm.[1]

Although the facts are stated more extensively by the parties, we recite only those that are necessary to an understanding of our discussion and disposition. Plaintiffs own property in the City of Seaside that they acquired in 1991. In 1992 or 1993, the city granted their application for an apartment development. Whether and to what extent the county participated in the proceedings leading to that land use decision by the city cannot be clearly discerned from the record here, but there is no dispute that the county could have participated in the proceedings and appealed the city's decision to LUBA.[2] The city's land use decision is now final.

Plaintiffs' property abuts Lewis & Clark Road, a county road, and the development requires access to that road. After the development was approved by the city, plaintiffs sought a permit for access to the road from the county, which the county denied. The county asserted that a 1980 agreement between it and the city and a 1982 agreement between it and plaintiffs' predecessor, both of which relate generally to county roads in the area of plaintiffs' property, preclude the issuance of the permit and access to the road.[3] This action ensued.

---

[1] The permit has been issued, and plaintiffs moved before they filed their brief to dismiss the appeal as moot. We denied the motion with leave to renew. Plaintiffs have renewed the motion, and we again deny it. The other claims in the action that were not adjudicated by the ORCP 67 B judgment *could* be affected by the issues that were decided by the mandamus claim, so the appeal of that claim is not moot. *See Yeon Street Partners v. Environmental Consulting*, 112 Or App 251, 828 P2d 477 (1992).

[2] It is reasonably clear from the record that no appeal was taken to LUBA. The relevant point, however, is not whether there *was* a LUBA appeal, but whether there *could* have been.

[3] Because the substance of the agreements is not relevant to the issues as we analyze them, we say little about their terms in the text. We note, however, that they are the subject of numerous disagreements among the parties. The county

■      The county argues, in separate assignments of error, that the trial court erred: (1) in concluding that the court, rather than LUBA, had jurisdiction to consider the denial of the access permit, and (2) in holding that the county had a mandatory duty to issue the permit. The county states that, although a "governmental decision denying or granting a road access permit would not normally constitute a 'land use decision' within the meaning of ORS 197.825(1)," the county's denial of the permit here is such a decision, and is therefore reviewable exclusively by LUBA. The county explains that that transformation in the status of the denial of the permit arises from the 1980 and 1982 agreements and other "unique issues sourced exclusively in the land use history" of plaintiffs' property and the use of the adjacent county roads.

Plaintiffs respond that the only land use decision involved in this case was the city's approval of the apartment development; that they enjoy the right of all property owners, established at common law and modified by ORS 374.305 *et seq*, to "reasonable access to public roads"; and that the county may not, in the guise of acting on the permit application, "revisit the City's land use decision" to which it was or could have been a party. In other words, the city's action was a land use decision and was appealable to LUBA; it is now final, and the county's ancillary action on the access permit is not a separate land use decision that is itself subject to LUBA's jurisdiction.

The county relies on *City of Oregon City v. Mill-Maple Properties, Inc.*, 98 Or App 238, 779 P2d 172 (1989). We held there that the trial court lacked jurisdiction over the city's declaratory judgment action, which alleged rights under an agreement between the city and Clackamas County. In the action, the city raised issues about the agreement that were analogous to those that the city had raised in earlier proceedings leading to a land use decision by the

_____

portrays the agreements as bearing directly on the "volume and flow of traffic on the affected county roads" and on access to them from plaintiffs' predecessor's property, as developed. Plaintiffs assign a less benevolent role to the county's use of the agreements, at least in the subtext of their argument. They suggest that one or both of the agreements, together with the county's initial denial and eventual issuance of the access permit, were used here "as an attempt to put pressure on the City of Seaside to accept" responsibility for one of the county roads.

county and in a city appeal to LUBA from that decision. The city argued in the declaratory judgment action appeal

"that the agreement is a 'land use regulation,' that this is an action to enforce the contractual annexation requirements and that the circuit court therefore has jurisdiction under ORS 197.825[(3)(a)]."

*Id.* at 241 (footnote omitted). We said, in rejecting that argument:

"The city seems to perceive ORS 197.825[(3)](a) as an election of remedies statute, under which circuit court 'enforcement' may be sought by a party after the land use decisionmaking process has yielded adverse results. We understand the statutory scheme differently. If the opposed action takes the form of or is permitted by a land use decision, the exclusive avenue of review is to LUBA and then to this court, in accordance with ORS 197.805 to ORS 197.855."

*Id.* at 242.

In its opening brief, the county explains how it considers this case and *Mill-Maple* to be analogous:

"The 'land use decision' in [*Mill-Maple*] concerned the city's refusal to provide urban services to a developer attempting to develop the property. Central to the issue of whether the city's actions were lawful was the interpretation of an urban growth management agreement between the city and county. Under these circumstances, the court found that LUBA had exclusive jurisdiction over the city's claims, and the circuit court counts were dismissed. *Id.* at 243.

"Similarly, the circuit court in this case was asked to interpret the impact of certain contractual agreements on plaintiffs' request for access to Lewis & Clark Road."

The county amplifies its argument in its reply brief:

"The fact that the parties' legal rights might turn on the interpretation of contracts or similar documents does not divest LUBA of jurisdiction. * * * In [*Mill-Maple*], this court found that LUBA had exclusive jurisdiction over the City of Oregon City's claims respecting development issues pertaining to certain property. Partially at bar in that case was the interpretation of an urban growth management agreement between the city and Clackamas County. The court

held that LUBA had exclusive jurisdiction over those claims. *Id.* at 243. For these reasons, defendants contend their motion to dismiss the alternative writ should have been granted on jurisdictional grounds."

We, too, consider this case and *Mill-Maple* to be analogous, but not for the reasons the county does. The important similarity is not that both cases "turn on the interpretation of contracts"; rather, the significant point is that all issues pertaining to the permissibility of the apartment development use that plaintiffs sought—including any traffic and road issues or restrictions required by the agreements or for other reasons—were or could have been resolved through the city's land use decision and through an appeal to LUBA from that decision. The city made the decision to permit the development that plaintiffs applied for; the city could and did consider standards and conditions pertaining to traffic and roads in its approval of the development; and the county could have appeared in the city proceedings and could have appealed the city's decision to LUBA. Whether the land use decisional process has reached the stage of a LUBA appeal, as with the underlying case in *Mill-Maple,* or is simply prospectively available as the forum for resolving land use issues, the process is exclusive. At both ends of the spectrum and at all points along it, if local or LUBA jurisdiction exists *or* has been exercised, there is no circuit court jurisdiction to render a decision on matters that were or could have been resolved through the local or LUBA process. *See Mill-Maple,* 98 Or App at 242; *see also, e.g., Campbell v. Bd. of County Commissioners,* 107 Or App 611, 813 P2d 1074 (1991).

The county's position here differs from that of the plaintiffs in *Mill-Maple, Campbell* and related cases, in one respect, and it is not material: Rather than urging that the circuit court *does* have jurisdiction over a matter that fell within the exclusive jurisdiction of others under the land use statutes, the county asserts that the circuit court *lacks* jurisdiction and that LUBA *had* exclusive jurisdiction over the denial of the access permit. Despite the different direction from which the jurisdictional argument comes here, however, the answer to that question is essentially the same: The city and LUBA, had its review been sought, had exclusive jurisdiction in the development application proceedings over the

matters that were or could have been decided there. Those are the matters that the county contends were open to reconsideration by it and relitigation before LUBA in conjunction with its later action on the access permit. *Beck v. City of Tillamook*, 313 Or 148, 831 P2d 678 (1992), and *Mill Creek Glen Protection Assoc. v. Umatilla Co.*, 88 Or App 522, 746 P2d 728 (1987), are among the authorities that make it clear that the county may not have a second bite at the apple. The city's decision was conclusive as to all of the matters that the county contends converted its denial of the access permit from a ministerial act into a land use decision. The only land use decision that is relevant to this case was the city's approval of plaintiffs' development, and the county's argument that its denial of the access permit was also a land use decision amounts to nothing more than a collateral attack on the city's decision.

In its second assignment, the county argues that there were discretionary aspects to its decision concerning the access permit and, therefore, that mandamus was not available to compel its issuance. ORS 374.310 provides, in relevant part, that in issuing access permits pursuant to ORS 374.305 *et seq:*

"(1)   The Department of Transportation with respect to state highways and the county court or board of county commissioners with respect to county roads shall adopt reasonable rules and regulations and may issue permits, not inconsistent with law, for the use of the rights of way of such highways and roads for the purposes described in ORS 374.305. However, the department shall issue no permit for the construction of any approach road at a location where no rights of access exist between the highway and abutting real property.

"(2)   Such rules and regulations and such permits shall include such provisions, terms and conditions as in the judgment of the granting authority may be in the best interest of the public for the protection of the highway or road and the traveling public * * *[.]

"* * * * *

"(3)   The powers granted by this section and ORS 374.315 shall not be exercised so as to deny any property adjoining the road or highway reasonable access."

The county places some reliance on the use of the word "may" in ORS 374.310(1) and on its authority to promulgate regulations under subsection (2). However, it has not adopted any regulations pursuant to the statute, and there was evidence from which the trial court could find that plaintiffs' access was consistent with all reasonable safety and technical standards. There was also evidence to support a finding that the only reason for the county's denial was its reliance on the two agreements; and, as in its first assignment, it is the agreements that the county again emphasizes in this assignment. It explains:

"[T]he County's denial of the requested road access permit involved the application of policy judgment and discretion by County officials. In short, it was not a decision based strictly on technical road access criteria. * * *

"The 1980 and 1982 agreements embody contract rights vested in Clatsop County respecting the development of the property purchased by these plaintiffs in 1991. In light of these bargained-for contractual rights, the County was fully authorized to enforce and protect those rights in future dealings with either the City of Seaside or the developers of the property covered by the agreements." (Footnote omitted.)

The county concludes:

"Unlike the mainstream application for a road access permit, this was not a routine ministerial decision made by the County Roadmaster based on technical access criteria [, because the county had] viable and legitimate interests in longstanding contractual agreements respecting [plaintiffs'] property."

Plaintiffs have satisfied every conceivable standard for issuance of an access permit under a statute that the county acknowledges *usually* is administered in a nondiscretionary way and subsection (3) of which prohibits the county from administering "so as to deny any property adjoining the road or highway reasonable access." Stated differently, plaintiffs have met and surmounted any discretionary bases that the county might ever have had or established to deny the permit. Stripped to essentials, the county's proffered reason for resisting the mandate of ORS 374.305 *et seq* is the vindication of its perceived contractual rights. However, county

action on an access permit application under those statutes is no more an occasion for enforcing a contract than it was for making a land use decision under the circumstances here. In the last analysis, the answer to both of the county's arguments is the same: The time for it to have raised any issues regarding road and traffic matters and the putative effect of the agreements on those matters was during the city's proceedings on plaintiffs' development application, and not in conjunction with plaintiffs' subsequent application to be allowed access for the approved use of their property.

Affirmed.