Argued and submitted September 17, 2015, affirmed April 20, 2016

THE FLIGHT SHOP, INC.,
an Oregon corporation, dba Professional Air;
and Aero Facilities, LLC,
an Oregon limited liability company,
*Plaintiffs-Appellants,*

*v.*

LEADING EDGE AVIATION, INC.,
an Oregon corporation,
*Defendant-Respondent.*

Deschutes County Circuit Court
14CV0133; A157216

373 P3d 177

Michael H. McGean argued the cause for appellants. With him on the briefs was Francis Hansen & Martin LLP.

Mark G. Reinecke argued the cause for respondent. With him on the brief was Bryant, Lovlien & Jarvis, P.C.

Before DeVore, Presiding Judge, and Flynn, Judge, and Schuman, Senior Judge.

DEVORE, P. J.

## DEVORE, P. J.

Plaintiff appeals from a general judgment that dismissed for lack of subject matter jurisdiction its two claims against defendant.[1] Plaintiff's claims allege that defendant has violated county zoning regulations governing defendant's aircraft refueling station and a canopy over that station. The county initially granted defendant site plan approval for the refueling station, but plaintiff appealed the county's decision to the Land Use Board of Appeals (LUBA). LUBA responded that, because the county had approved the site plan without making a required finding, the matter should be remanded to the county for further proceedings. After LUBA remanded but before further proceedings were done, plaintiff initiated this enforcement action in circuit court against defendant, seeking injunctive relief and statutory fines. The court concluded that it lacked authority to consider plaintiff's claims because the land use decisional process was still ongoing and because LUBA has exclusive jurisdiction over the issues raised in plaintiff's claims. We agree with the trial court, and we affirm.

On a motion to dismiss for want of jurisdiction, we assume the truth of the facts alleged in the complaint, and we may consider additional facts established in the record. *Nordbye v. BRCP/GM Ellington*, 271 Or App 168, 174, 349 P3d 639 (2015); *Beck v. City of Portland*, 202 Or App 360, 365, 122 P3d 131 (2005). Plaintiff, The Flight Shop, Inc., operates an aircraft services business at the Bend Municipal Airport. Defendant, Leading Edge Aviation, Inc., also operates a business at the Bend Municipal Airport, an aircraft rental and instruction business.

The use of property at the airport is subject to the zoning regulations of Deschutes County. The county has adopted the Bend Municipal Airport Master Plan as a planning document to be used to guide future airport development. In April 2013, defendant filed a land use application with the county. The application sought review

---

[1] There are two plaintiffs, but there is no discussion in the record that is specific to the second plaintiff or that makes a material distinction between them. We refer in our discussion only to the lead plaintiff.

and approval of a site plan in order to build a refueling station at the airport on a property located to the north of defendant's existing business. The property is zoned as an Airfield Operations District (AOD). Defendant's plans contemplated two fuel tanks and a self-serve fueling station. Those plans did not then specify any structure to cover the fuel tanks.

The county's hearings officer approved defendant's site plan. When doing so, she did not find it necessary to consider whether defendant's site plan was consistent with the county's airport master plan. She reasoned that, under the applicable county codes, only uses that are conditionally permissible within the various airport zones must be found to be consistent with the airport master plan. She concluded that defendant's proposed refueling station was permitted outright and that the airport master plan did not need to be consulted when a use was permitted outright. *See* Deschutes County Code (DCC) 18.76.070 ("fuel storage and sales" is "permitted outright" on land zoned as an "Airfield Operations District").

Plaintiff sought to challenge the approval of defendant's plan before the county's Board of Commissioners, but the local board declined review. Plaintiff appealed to LUBA and argued, among other things, that the hearings officer had erred when she decided not to consider whether defendant's application was consistent with the airport master plan.

While the LUBA appeal was pending, defendant received the necessary building permits and began to construct the refueling station. Some time later, defendant received an amended building permit for a canopy over its new fuel tanks. Defendant finished installation of the fuel tanks and pumps in November 2013. In early January 2014, defendant began to construct the canopy.

About a week later, LUBA issued its decision. LUBA ruled that the hearings officer had erred when she failed to consider the airport master plan. LUBA determined that even uses that the county code permits outright in airport zones must be found to comply with any relevant

standards that appear in the airport master plan.[2] LUBA observed that the hearings officer had not reached the question whether the airport master plan contained any standards that were relevant to defendant's application. LUBA concluded that the county should be given that opportunity. LUBA directed that "[t]he county's decision is remanded" for further evaluation.

Three days after LUBA's decision, plaintiff sent the county a request that it take enforcement action against defendant for its continued operation of the refueling station, which plaintiff alleged was now in violation of the county's land use regulations. The county sent a letter advising defendant of plaintiff's request and asking defendant for a meeting to "discuss [plaintiff's request] and [take] corrective action." After defendant met with county officials, the county decided not to initiate code enforcement against defendant. Instead, defendant prompted the county to resume proceedings to reconsider defendant's proposal in light of LUBA's opinion. ORS 215.435.[3] Taking the cue, the county set a public hearing and engaged the hearings officer for further consideration of the site plan.

Plaintiff filed a private enforcement action in February 2014, before the conclusion of local proceedings. Under ORS 215.185, a private person is authorized to bring an enforcement action if that person owns an "interest in real property" that "may be affected" by a violation of a county land use regulation. Invoking that authority, plaintiff alleged that defendant was violating the county code (1) by continuing to operate its refueling station after LUBA remanded the approval of defendant's site plan and (2) by constructing a canopy without first seeking site plan approval for that structure. Plaintiff petitioned the court to grant "immediate and permanent injunctive relief" to prohibit "defendant from continuing to maintain and operate

---

[2] As an example, LUBA commented that "a proposal to site a fueling station as an outright permitted use in an area designated on the airport master plan for expansion of the runway" would almost certainly be disallowed as inconsistent with the master plan.

[3] After a LUBA remand, a local body is required to take final action on an application within 120 days of the applicant's written request to resume the proceedings. ORS 215.435(1), (2).

its fuel station without land use approval" and to require "defendant to remove the fuel tanks." In addition, plaintiff urged the court to fine defendant for continuing violations and to award those fines to plaintiff, as permitted by DCC 1.16.045.

Defendant responded with a motion to dismiss as permitted by ORCP 21 A. Defendant argued, among other things, that the trial court did not have subject matter jurisdiction over either of plaintiff's claims. As to the first claim, defendant argued that the site plan approval for its refueling station was "still in the land use process" and that LUBA has exclusive jurisdiction to review challenges to that process. As to the second claim, defendant argued that the county's decision to issue it a building permit for the canopy without requiring that defendant go though the site planning process was itself a land use decision. As such, defendant argued, the jurisdiction to review that decision belonged exclusively to LUBA.

The trial court postponed its decision on defendant's motion in order to allow the parties to present evidence on plaintiff's petition for a preliminary injunction. After receiving that evidence, the trial court declared that injunctive relief was not appropriate. At a later hearing, the trial court granted defendant's Rule 21 motion and dismissed plaintiff's claims, concluding that the trial court lacked subject matter jurisdiction. Plaintiff appeals, assigning error to that ruling. We review that decision for errors of law. *Campbell v. Tardio*, 261 Or App 78, 80, 323 P3d 317 (2014).

Necessarily, we begin with ORS 197.825, the statute that divides jurisdiction over land use matters between LUBA and the circuit courts. That statute provides that LUBA has jurisdiction to "review any land use decision or limited land use decision of a local government, special district or a state agency." ORS 197.825(1). The circuit courts retain jurisdiction over actions to enforce LUBA's orders and over actions for "declaratory, injunctive or mandatory relief" that have been "brought to enforce the provisions of an adopted comprehensive plan or land use regulations." ORS 197.825(3)(a), (b). In effect, ORS 197.825 draws a "jurisdictional line" between "the land use decision and review

process and the enforcement process." *Clackamas County v. Marson*, 128 Or App 18, 22, 874 P2d 110, *rev den*, 319 Or 572 (1994).

Under ORS 197.825, LUBA's jurisdiction over the review of land use decisions is "exclusive" of the circuit court's jurisdiction over enforcement actions. ORS 197.825(1). There is "no overlap in the subjects over which LUBA and the circuit court have jurisdiction." *Doughton v. Douglas County*, 90 Or App 49, 52, 750 P2d 1174 (1988). When the matter at issue is "subject to the land use decision process or[,] susceptible to resolution though a land use decision," jurisdiction belongs to LUBA and not the circuit courts. *Marson*, 128 Or App at 22.

LUBA's exclusive jurisdiction over the review of land use decisions is central to Oregon's "comprehensive system for reviewing land use decisions." *Simon v. Board of Co. Comm. of Marion Co.*, 91 Or App 487, 490, 755 P2d 741 (1988). As we have explained, "[b]y creating LUBA and giving it exclusive jurisdiction, the legislature created a body with particular expertise to review land use decisions and channeled such decisions to that body." *Id.* The separate land use decisional process was also designed to promote "[q]uick disposition of disputed issues." *Id.*; *see also* ORS 197.805 ("It is the policy of the Legislative Assembly that time is of the essence in reaching final decisions in matters involving land use and that those decisions be made consistently with sound principles governing judicial review.").

The jurisdictional line between the circuit courts and LUBA is a line between land use enforcement, on one hand, and land use decision-making and administrative review, on the other hand. It is a line better expressed through examples. A party may bring an enforcement action in circuit court when a violator engages in a land use contrary to a zoning ordinance and that violator "has filed no application to allow that use or have it declared permissible through a land use decision." *Marson*, 128 Or App at 22 (sustaining court's jurisdiction for county to enforce zoning against impermissible parking of log trucks in exclusive farm use zone). However, when a developer begins a project pursuant to a site plan approval with which neighbors

disagree, then the only forum for the neighbors' challenge to that approval would be LUBA. The circuit court would not have jurisdiction even if the project seemed to be improperly approved. *See, e.g., Mehring v. Arpke*, 65 Or App 747, 672 P2d 382 (1983), *rev den*, 296 Or 411 (1984) (dismissing private enforcement action where site plan approved consistent with prior development approval and despite subsequent zoning change).

The principle that LUBA has exclusive jurisdiction over the land use decision-making process means that "circuit court jurisdiction under ORS 197.825(3)(a) is very limited in nature[.]" *State ex rel J.C. Reeves Corp. v. City of Portland*, 131 Or App 578, 580, 886 P2d 1095 (1994), *rev den*, 320 Or 569 (1995). Even actions that do not specifically challenge land use decisions may still fall outside of the circuit courts' jurisdiction. *City of Oregon City v. Mill-Maple Properties, Inc.*, 98 Or App 238, 242-43, 779 P2d 172 (1989) (dispute over city-county urban growth management agreement is a LUBA matter). A circuit court may not consider arguments that are raised in an enforcement action if those same arguments were considered and rejected during an earlier LUBA appeal. *Id.* The circuit courts also lack jurisdiction over an action that raises issues that could have been, but were not, raised through a land use decision and "through an appeal to LUBA from that decision." *Doney v. Clatsop County*, 142 Or App 497, 502, 921 P2d 1346 (1996). As we have previously explained,

> "Whether the land use decisional process has reached the stage of a LUBA appeal, * * * or is simply prospectively available as the forum for resolving land use issues, the process is exclusive. At both ends of the spectrum and at all points along it, if local or LUBA jurisdiction exists or has been exercised, there is no circuit court jurisdiction to render a decision on matters that were or could have been resolved through the local or LUBA process."

*Id.* (emphasis omitted). For all the same reasons, it matters little whether a land use decision is on its way up on appeal to LUBA or on its way down after remand from LUBA for further local proceedings, because there is no circuit court jurisdiction over what may again be a matter for LUBA review.

In this case, plaintiff argues that the circuit court had jurisdiction over its claims because they did not challenge any land use decision. As to its first claim, plaintiff contends that, after LUBA remanded the hearings officer's decision, defendant no longer had a site approval for the operation of the refueling station as required by the county's zoning ordinances. Therefore, says plaintiff, the circuit court had jurisdiction to consider plaintiff's claim that defendant was engaged in an unpermitted land use. As to its second claim, plaintiff contends that defendant never applied for site plan approval to build a canopy over its fuel tanks. Therefore, says plaintiff, the enforcement claim involving the canopy does not relate to any land use decision. As to both claims, we disagree.

Implicit in plaintiff's argument that the circuit court has jurisdiction over its first claim for relief is the notion that a circuit court would be capable of enforcing the county's land use regulations against defendant without deciding matters that have yet to be "resolved through the local or LUBA process." *Doney*, 142 Or App at 502. The argument ill-suits the circumstances. Plaintiff cannot deny that the central dispute over defendant's tanks and refueling station was then pending before the local body and could again be appealed to LUBA. Those matters were not yet resolved through the land use process when plaintiff filed its complaint. Accordingly, those matters were matters for the hearings officer, the county board, or LUBA, but not the circuit court. *Campbell v. Bd. of County Commissioners*, 107 Or App 611, 813 P2d 1074 (1991); *Mill-Maple Properties, Inc.*, 98 Or App at 242-43; *Mehring*, 65 Or App at 752.

Plaintiff's requested remedies underscore the impropriety of circuit court intervention. Plaintiff sought an injunction to prevent defendant from operating its fuel station, a directive to require that the fuel tanks be removed, and imposition of fines against defendant. Mandatory injunctions are an "extraordinary" remedy that should only be granted after a court has carefully considered "the equities between the parties." *Hickman v. Six Dimen. Cust. Homes*, 273 Or 894, 898, 543 P2d 1043 (1975). In this case, the equities between the parties would have required prediction of a land use decision still pending before the county.

If land use approval were pending and likely, a court would be unlikely to impose an injunction that would require defendant to remove the fuel tanks. Worse, the trial court would have been required indirectly to evaluate a land use proposal without benefit of the expertise of local land use staff or the judgment of local land use decision-makers.

The same problem recurs with plaintiff's request that defendant be fined. Under the Deschutes County Code, the "use of a building or structure * * * in violation of any provision of [the Deschutes County zoning ordinances] is a Class A violation[,]" DCC 18.144.050, which is punishable by a fine of up to $4,000 per occurrence, DCC 1.16.010(C) and ORS 153.018(3)(a). The amount of the fine may be reduced based on factors that include the "severity of the violation" and the "reason(s) the violation has not been cured." DCC 1.16.010(G). Again, plaintiff's claim would have required the court to consider issues pending in the land use decisional process. The "severity" of defendant's alleged violation depends on whether defendant's land use actions were just unpermitted or were both unpermitted and inconsistent with the airport master plan. When considering why the violation was not cured, the circuit court would have been required to consider the status, progress, and contents of plaintiff's site plan application. Defendant could well have argued that its delayed approval had nothing to do with a substantive deficiency in its site plan application, that its site plan proposal was shortly to be approved anew by county, and that it was unquestionably reasonable to continue its current operations in the meantime.[4]

We conclude that the circuit court lacked subject matter jurisdiction over plaintiff's first claim for relief, because that claim involved issues that were subject to an ongoing land use decisional process. *Campbell*, 107 Or App 611; *Mill-Maple Properties, Inc.*, 98 Or App at 242-43; *Mehring*, 65 Or App at 752. To hold otherwise would permit one land use decision to be subject to two parallel

---

[4] During the pendency of this case, the county approved anew defendant's site plan application. Again, plaintiff appealed that decision to LUBA, which affirmed the county's decision. *See Flight Shop, Inc. v. Deschutes County*, 71 Or LUBA 141 (2015).

adjudication processes. *See Simon*, 91 Or App at 488 (reasoning that to allow duplicative processes would "defeat the legislature's obvious intent to funnel review of land use decisions through LUBA").

For similar reasons, we conclude that the circuit court lacked subject matter juridisction over plaintiff's second claim for relief, which challenged defendant's canopy over the fuel tanks. Plaintiff argues that "[t]he second claim is different from the first claim because, unlike the fuel station * * *, defendant never submitted any application for site plan review of the canopy structure prior to construction." Also, plaintiff says, its claim has nothing to do with defendant's building permit. Plaintifff concludes that, because the court would not review any land use decision, the circuit court has jurisdiction over the second claim.

Plaintiff's effort to step wide of any question of land use is too much of a stretch. As it happens, plaintiff could have challenged defendant's lack of site plan approval for the canopy by appealing to LUBA the county's decision to grant defendant a building permit for the canopy. Plaintiff's failure to appeal that decision implicates a principle that we articulated in *Doney*, 142 Or App 497. That is, where LUBA is available as the forum to review a land use issue, the circuit courts lack jurisdiction to hear an enforcement action that raises that same issue.

Some explanation is required to draw out that principle from the facts of that case. In *Doney*, the City of Seaside made a land use decision when it granted the plaintiffs an application to build an apartment complex. *Id.* at 499. Clatsop County could have appealed that decision to LUBA, but did not do so. *Id.* As a consequence, that land use decision became final. *Id.* Next, to begin to develop the approved complex, the plaintiffs requested an access permit for the county road that abutted their property. *Id.* The county denied the permit. *Id.* The plaintiffs brought a mandamus action to compel the county to issue an access permit, and the circuit court granted relief. *Id.* at 500.

The county appealed, arguing that the circuit court had lacked jurisdiction to grant mandamus relief, because the county's denial of the access permit was purportedly a

land use decision that was reviewable only by LUBA. *Id.* We rejected the county's argument, recognizing that it was "nothing more than a collateral attack" on the *city's* initial land use decision. *Id.* at 503. We held that the trial court was correct that the county was barred from relitigating issues that "could have been resolved through the city's land use decision and through an appeal to LUBA from that decision." *Id.* at 502. That was true because "[t]he city and LUBA, had its review been sought, had exclusive jurisdiction in the development application proceedings over the matters that were or could have been decided there." *Id.* at 502-03. The true land use issues were properly the subject of the city's earlier approval, not the county's later permit for mere access to the county road. Although obscured by its facts, *Doney* stands for an obvious principle: When the land use review process is available to decide a land use issue, that issue must be decided through that process. A land use dispute must be raised at the time of the land use process, not later in the guise of another proceeding.

In the case at hand, the Deschutes County Code provides that any use of land zoned AOD is subject to the code provisions governing approval of a site plan.[5] DCC 18.76.020(A). The purpose of the site-plan code provisions is to provide "for administrative review of the design of certain developments and improvements in order to promote functional, safe, innovative and attractive site development compatible with the natural and man-made environment." DCC 18.124.010. The county's code provisions dictate that "[n]o building * * * permit shall be issued for a use subject to [site plan approval], nor shall such a use be commenced, enlarged, altered or changed until a final site plan is approved * * *." DCC 18.124.030(A). Putting the provisions together, the county code makes obtaining a final site plan approval for a use a prerequisite for the issuance of a building permit, at least in certain situations. Yet, the code also allows the county to issue a building permit without requiring a land owner to submit a new site plan if the county decides that the construction of the building will not commence, enlarge,

---

[5] A site plan consists of "[t]he layout and design of all existing and proposed improvements" to the property. DCC 18.124.020.

alter, or change a land use that has already received a site plan approval. These are land use decisions.[6] *See* ORS 197.015(10)(a) (defining land use decision to include "[a] final decision or determination made by a local government or special district that concerns the * * * application of," among other things, "[a] land use regulation").

Because the decision to issue a building permit for defendant's canopy required the county to make a land use decision, the decision to issue that building permit was appealable to LUBA. Once in that forum, plaintiff could have argued that the county had erroneously determined that the canopy neither constituted a new land use, nor enlarged, altered, or changed and existing land use. Alternatively, plaintiff could have argued that the county failed to make one of those required determinations. *See Murphy Citizens Advisory Com. v. Josephine County*, 319 Or 477, 482, 878 P2d 414 (1994) (holding that a decision by a county that fails to apply applicable land use standards contained in "the county's goals, comprehensive plan, and land use regulations" is still a land use decision that is exclusively reviewable by LUBA). No matter what the problem with the canopy, LUBA had exclusive jurisdiction over its issues.

In sum, plaintiff's first claim improperly sought to interject the circuit court into issues pending in an ongoing land use process about the tanks and fueling station, while the second claim implicated issues that could have been litigated in an appeal to LUBA from the decision to issue a building permit for the canopy. The circuit court did not err in dismissing plaintiff's complaint for lack of jurisdiction over either claim.

Affirmed.

---

[6] We acknowledge that the issuance of a building permit "under clear and objective land use standards" is not a "land use decision" for the purposes of the statute that governs LUBA's jurisdiction. ORS 197.015(10)(b)(B). However, the issuance of a building permit does qualify as a land use decision if the standards governing the approval of a building permit do not unambiguously require the local government to reach that decision and if the decision would otherwise meet the definition of "land use decision" in ORS 197.015(10). *Hardtla v. City of Cannon Beach*, 183 Or App 219, 223-26, 52 P3d 437, *rev den*, 335 Or 90 (2002). We conclude that, in this case, the standards that the county was required to apply were ambiguous rather than clear and objective. Consequently, we conclude that the county's decision to grant defendant a building permit was a land use decision.