Argued and submitted December 3, 2015, affirmed April 20, petition for review
allowed October 20, 2016 (360 Or 465)

ROGUE ADVOCATES;
and Christine Hudson,
*Plaintiffs-Appellants,*

*v.*

BOARD OF COMMISSIONERS
OF JACKSON COUNTY;
and Mountain View Paving, Inc.,
*Defendants-Respondents.*

Jackson County Circuit Court
14CV11829; A158485

372 P3d 587

Maura S. Fahey argued the cause for appellants. With her on the briefs were Courtney Johnson and Crag Law Center.

Brett A. Baumann argued the cause and filed the brief for respondent Board of Commissioners of Jackson County.

H. M. Zamudio argued the cause for respondent Mountain View Paving, Inc. With her on the brief was Huycke O'Connor Jarvis, LLP.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

DEVORE, J.

## DEVORE, J.

Plaintiffs, Rogue Advocates and Christine Hudson, appeal a general judgment that dismissed their four claims against defendants Jackson County and Mountain View Paving, Inc. Those claims were brought in the context of an ongoing land use dispute over Mountain View's operation of an asphalt batch plant near a tributary of the Rogue River. Plaintiffs originally challenged those operations before the county and the Land Use Board of Appeals (LUBA). LUBA remanded certain land use application approvals for further proceedings, but, before their conclusion, plaintiffs initiated this action in the circuit court. The court granted defendants' motion to dismiss for lack of subject matter jurisdiction. We agree with that conclusion and therefore affirm.

The relevant facts are undisputed. In April 2001, Mountain View acquired property near the City of Talent. Prior to any contrary zoning, the property's previous owner had mined aggregate material on one portion of the property and leased another portion to a company that operated a concrete batch plant. Since 1973, the property has been subject to zoning that prohibits batch plants and other industrial uses. According to Jackson County land use ordinances, a substantial portion of the property is within the 100-year floodplain of Bear Creek and some of the property is within the designated floodway of Bear Creak. Jackson County's ordinances require a floodplain development permit for all development within a designated floodplain or floodway. Jackson County Land Development Ordinance 7.2.2(C). When Mountain View acquired the property, it constructed a permanent asphalt batch plant.

In 2011, a county code-enforcement officer issued a warning letter to Mountain View, requiring the business to submit a "verification of nonconforming use application." In response, Mountain View began the process of securing that verification. What followed was a series of land use decisions that have yet to be resolved. Before we recap those proceedings, we first describe a lawful nonconforming use of land and the significance of verification of a nonconforming use.

A lawful nonconforming use of land is one that is contrary to a land use ordinance but that nonetheless is allowed to continue because the use "lawfully existed prior to the enactment of the ordinance." *Eagle Creek Rock Prod. v. Clackamas Co.*, 27 Or App 371, 374, 556 P2d 150 (1976), *overruled on other grounds by Forman v. Clatsop County*, 63 Or App 617, 665 P2d 365 (1983); ORS 215.130(5). To summarily prohibit a lawfully established use of land "would constitute a taking without compensation." *Bergford v. Clack. Co./Trans. Serv.*, 15 Or App 362, 367, 515 P2d 1345 (1973). Nonconforming uses are recognized by ORS 215.130, which provides, in part, that "[t]he lawful use of any building, structure or land at the time of the enactment or amendment of any zoning ordinance or regulation may be continued." ORS 215.130(5). The right to continue a lawful nonconforming use runs with the land and is not affected by a change in ownership or occupancy. ORS 215.130(5). Alterations to a nonconforming use may also be permitted as long as any changes to the use of land or in the structure or physical improvements of the land that accompany the alteration result in "no greater adverse impact to the neighborhood." ORS 215.130(5), (9)(a). The statute also provides that "[a] local government may adopt standards and procedures to implement the provisions of this section," including "[c]onditioning approval of the alteration of a use in a manner calculated to ensure mitigation of adverse impacts * * *." ORS 215.130(10).

Jackson County has adopted such standards and placed them in its Land Development Ordinances (hereafter LDO or "ordinances"). Chapter 11 of the county's ordinances governs nonconforming uses and is introduced by this statement:

"The County recognizes the interests of property owners in continuing to use their property. It is the general policy of the County to allow nonconformities to continue to exist and be put to productive use, while bringing as many aspects of the use or structure into conformance with this Ordinance as is reasonably practicable."

LDO 11.1.3(A). The county's ordinances establish a process though which an applicant can obtain a "verification of lawful nonconforming status." LDO 11.8.1. They also establish

a process by which a person can apply "to change a nonconforming use to another, no more intensive nonconforming use." LDO 11.2.1(A). Consistent with ORS 215.130(5), the county ordinances require a person applying to alter a nonconforming use to "show that the proposed new use will have no greater adverse impact on the surrounding neighborhood." LDO 11.2.1(A). Expansions of nonconforming uses are allowed under limited circumstances when the "expansion includes improvements to the existing use to a degree that the existing use, including the proposed expansion, complies with or is more in conformance with the development standards of Chapter 9, and will have no greater adverse impacts on the surrounding neighborhood." LDO 11.2.1(B)(2).

In September 2012, county planning staff verified Mountain View's nonconforming use and approved its floodplain development application. Dissatisfied, plaintiffs appealed, and an administrative hearing was held. A hearings officer issued two separate decisions, one concerning the nonconforming use verification and the other concerning the floodplain development. In the first decision, the hearings officer concluded that the batch plant was a lawful nonconforming use, but that Mountain View's further development of the site had either altered or expanded that use. Because Mountain View's application had not asked the county to approve either an alteration or an expansion of a lawful nonconforming use, the hearings officer denied the application. In the second decision, the hearings officer denied the floodplain development permit because Mountain View's application for that permit was premised on the approval of its batch plant operations as a lawful nonconforming use.

After that ruling, the county and Mountain View entered into a stipulated agreement. The county agreed that it would not pursue certain enforcement action against Mountain View if it would remove structures that were not part of the original nonconforming batch plant use and apply for floodplain permits for the structures that do qualify as part of the lawful nonconforming use. Mountain View subsequently filed, and the county approved, an application for another floodplain development permit for the asphalt batch plant.

Meanwhile, plaintiffs appealed to LUBA, challenging the hearing officer's conclusion that a limited asphalt batch plant operation was a lawful nonconforming use on the property. Plaintiffs also appealed the county's approval of Mountain View's second floodplain development permit.

In April 2014, LUBA issued an opinion, *Rogue Advocates v. Jackson County*, 69 Or LUBA 271 (2014) (*Rogue I*), that dealt with the hearings officer's decision on the nonconforming use. LUBA observed, "We understand [plaintiff] to argue that replacing one kind of batch plant use with the other kind represents an 'alteration' of the original use that must be approved as such, and that absent such approval the alteration cannot be verified as part of the original nonconforming use." *Id.* at 281. LUBA agreed that the hearings officer was incorrect when he concluded "that replacing a concrete batch plant with an asphalt batch plant has no significance in verifying the nature and extent of the nonconforming use." *Id.* at 283. LUBA concluded, instead, that "[u]nder ORS 215.130(5) through (11), the only changes to a nonconforming use that do not require review and approval as alterations are (1) repairs or maintenance to the nonconforming use, or (2) restoration or replacement of the use after a fire or natural disaster." *Id.* LUBA found that neither of those situations applied to Mountain View's application and that, therefore, the asphalt batch plant that Mountain View constructed "is lawful only if it qualifies and is approved as an alteration of the nonconforming concrete batch plant." *Id.* LUBA remanded the application "for the hearings officer to verify the nature and extent of the lawful nonconforming batch plant use, without considering as part of the verified use any unapproved alterations that occurred in 2001 or at other relevant times since 1992." *Id.* at 286.

In August 2014, LUBA issued another opinion, *Rogue Advocates v. Jackson County*, 70 Or LUBA 163 (2014) (*Rogue II*), that overturned Mountain View's floodplain development permit. LUBA explained that, because the county had improperly determined the scope and nature of the legal nonconforming use on Mountain View's property, the floodplain development permit may have allowed "structures that

may have been added in 2001 when the then-existing concrete batch plant was converted to an asphalt batch plant or thereafter." In *Rogue II* LUBA clarified that its "decision in *Rogue I* concludes that the nonconforming use only includes the *concrete* batch plant, and any related structures, [that] were on the property in 1992, and that the conversion to an *asphalt* batch plant in 2001 can be approved only as an alteration of the lawful nonconforming *concrete* batch plant use." (Emphasis in original.) LUBA indicated what would have to be done before the county could issue a floodplain development permit:

> "Once the county has identified the scope and nature of the nonconforming batch plant that existed on the property prior to its conversion to an asphalt batch plant in 2001, it will be in a position to grant floodplain development permits for the verified nonconforming use. If [Mountain View] desire[s] a floodplain development permit for the current asphalt batch plant, [it] will first need to seek approval for any alterations to the nonconforming concrete batch plant that have occurred since 1992, particularly those alterations made in 2001 or thereafter that were made to convert that concrete batch plant to the current asphalt batch plant."

In compliance with LUBA's decisions, Mountain View prompted remand proceedings before the county to determine the nature and extent of Mountain View's lawful nonconforming use.

Plaintiffs, meanwhile, initiated the enforcement action in circuit court that is the subject of this case. Plaintiffs brought four claims for a declaratory judgment and injunctive relief, naming both the county and Mountain View as defendants. In the first and second claims, plaintiffs alleged that Mountain View was violating both ORS 215.130 and county ordinances by "continuing to operate an asphalt batch plant * * * without the required verification of the use as a lawful alteration or expansion of a nonconforming use" and by "continuing to conduct development activities within an area of special flood hazard of Bear Creek without authorization under a Floodplain Development Permit." Based on the first claim, plaintiffs asked for a judgment

"declaring the actions of Mountain View Paving in using property without a land use permit to be in violation of the Jackson County Land Development Ordinance and ORS 215.130(5), and for an injunction compelling Mountain View Paving to cease and desist operations and use of the Property for illegal asphalt batching operations[.]"

Based on their second claim, plaintiffs asked for a judgment

"declaring the actions of Mountain View Paving in conducting development activity within a designated area of special flood hazard without a Floodplain Development Permit to be in violation of the Jackson County Land Development Ordinance, and for an injunction compelling Mountain View Paving to cease and desist illegal development within the area of special flood hazard."

In their third claim, plaintiffs alleged that, by allowing Mountain View to continue to operate the batch plant, the county "has violated its legal duty to enforce its own land use regulations." Plaintiffs asked for a judgment "declaring that Jackson County has failed to enforce its land use ordinance and for an injunction compelling Jackson County to enforce its land use ordinance[.]"

Finally, in their fourth claim, plaintiffs alleged that both the county and Mountain View had "failed to carry out and comply with" the terms of LUBA's order in *Rogue I*. Plaintiffs asked for a judgment making that declaration and imposing "an injunction to enforce the terms" of that judgment.

Defendants moved to dismiss the complaint on several grounds, including that the circuit court lacked subject matter jurisdiction over plaintiffs' claims and that plaintiffs' fourth claim for relief failed to allege sufficient ultimate facts to state a claim. The trial court dismissed all of plaintiffs' claims for lack of subject matter jurisdiction.

On appeal, plaintiffs argue that ORS 197.825(3)(a) gives the circuit court jurisdiction over any of their claims that seek to enforce the ordinances against Mountain View based on "the absence of permits authorizing the use of land for the asphalt batch plant operations." Plaintiffs also contend that ORS 197.825(3)(b) gives the circuit court jurisdiction over any claim that seeks to enforce LUBA's orders;

and the fourth is one such claim. We review the trial court's conclusion about jurisdiction for errors of law. *Merten v. Portland General Electric Co.*, 234 Or App 407, 413, 228 P3d 623, *rev den*, 348 Or 669 (2010).

Jurisdiction over land use issues is indeed governed by ORS 197.825. That statute gives LUBA "exclusive jurisdiction to review any land use decision or limited land use decision of a local government, special district or a state agency." ORS 197.825(1). We have interpreted that provision to mean that LUBA is the only forum to which a local land use decision may be appealed. *Doughton v. Douglas County*, 90 Or App 49, 52, 750 P2d 1174 (1988). In *Doney v. Clatsop County*, 142 Or App 497, 502, 921 P2d 1346 (1996), we explained that "[w]hether the land use decisional process has reached the stage of a LUBA appeal, * * * or is simply prospectively available as the forum for resolving land use issues, the process is exclusive." The circuit courts do have jurisdiction over actions to enforce local land use regulations, ORS 197.825(3)(a) and to enforce LUBA orders, ORS 197.825(3)(b).[1] A party may not, however, ask a circuit court to disrupt the land use decisional process by asking the court to make a land use decision "under the guise of a circuit court enforcement proceeding." *Campbell v. Bd. of County Commissioners*, 107 Or App 611, 615, 813 P2d 1074 (1991).

In *City of Oregon City v. Mill-Maple Properties, Inc.*, 98 Or App 238, 242-43, 779 P2d 172 (1989), we concluded that a party may not raise arguments about a land use issue in a circuit court if those same arguments were considered and rejected during an earlier LUBA appeal. Nor may a party raise issues that could have been, but were not, raised through a land use decision and "through an appeal to LUBA from that decision." *Doney*, 142 Or App at 502. "At

---

[1] ORS 197.825(3) provides, in part,

"the circuit courts of this state retain jurisdiction:

"(a) To grant declaratory, injunctive or mandatory relief in proceedings arising from decisions described in ORS 197.015(10)(b) or proceedings brought to enforce the provisions of an adopted comprehensive plan or land use regulations; and

"(b) To enforce orders of the board in appropriate proceedings brought by the board or a party to the board proceeding resulting in the order."

both ends of the spectrum and at all points along it, if local or LUBA jurisdiction exists or has been exercised, there is no circuit court jurisdiction to render a decision on matters that were or could have been resolved through the local or LUBA process." *Id.* (emphasis omitted).

In *Flight Shop, Inc. v. Leading Edge Aviation, Inc.*, 277 Or App 638, 373 P3d 177 (2016), a case decided this day, we applied that principle to an enforcement action that was brought while the land use decisional process was in progress. In that case, the defendant began operating an aircraft refueling station after the county approved its site plan. *Id.* at 641. The plaintiff then appealed that approval to LUBA, which reversed and remanded on the basis that the county was required to make additional findings before approving the defendant's site plan. *Id.*

While the remand proceeding was still pending, the plaintiff brought an enforcement action seeking to have defendant fined for continuing to operate the refueling station after LUBA's reversal of its site plan approval. *Id.* at 642. The plaintiff also sought injunctive relief. *Id.* at 642-43. The circuit court dismissed the plaintiff's complaint for lack of subject matter jurisdiction. *Id.* at 643. On appeal, we affirmed. We explained that the trial court lacked jurisdiction on one of the plaintiff's claims because the relief that the plaintiff sought would have required the circuit court to weigh in on "issues that were subject to an ongoing land use decisional process." *Id.* at 647.

The principles in *Flight Shop, Inc.* readily apply to plaintiffs' first two claims in this case. Those two claims asked the circuit court to impose an injunction that would compel Mountain View to "cease and desist operations and use of the Property for illegal asphalt batching operations" and to "cease and desist illegal development within the area of special flood hazard." If a circuit court were to grant such relief, the court would decide land use issues that were pending before the county. As we will reiterate, the circuit court did not have jurisdiction to do so.

It is undisputed that the undefined right to some type of concrete batch plant operation has attached to the land owned by Mountain View as a lawful nonconforming

use. A party who owns land upon which a lawful nonconforming use exists has the right to continue that use because "to eliminate it forthwith upon adoption of a zoning plan would constitute a taking without compensation." *Bergford,* 15 Or App at 367. Consequently, "[t]he right to continue a nonconforming use is a property right * * *." *Eagle Creek Rock Prod.,* 27 Or App at 374. On the other hand, a party does not necessarily have an automatic right to alter or expand a nonconforming use. Rather, alterations to a nonconforming use are subject to approval by the county that has jurisdiction over the property in question. ORS 215.130(5), (9).

At the time that plaintiffs brought their enforcement action, the "nature and extent" of the original nonconforming use had not been determined; LUBA had remanded that issue to the county for further consideration. Although Mountain View may have violated local ordinances to some extent when it made changes to the original lawful nonconforming use on its property, the contours of that putative violation are not clear or determined. Until the land use decisional process determines the "nature and extent" of the batch plant operations prior to 1992, it is impossible to know what portions of Mountain View's batch plant operations are a lawful nonconforming use and what portions are potentially unlawful alterations of that nonconforming use. Similarly, as LUBA stated in *Rogue II,* the county lacks the authority to issue floodplain development permits to Mountain View because, until the "scope and nature of the legal nonconforming batch plant has been determined," the county will not know which structures are part of lawful nonconforming use and which structures were "added in 2001 when the then-existing concrete batch plant was converted to an asphalt batch plant or thereafter." At the time that plaintiff filed their enforcement action, the land use decisional process had yet to determine, as to both permits, which activities were unlawful alterations of a lawful nonconforming use and which of the structures were unlawful for want of a floodplain development permit.

That uncertainty is why the circuit court lacks jurisdiction to grant injunctive relief as to plaintiffs' first and second claims. In order to enjoin Mountain View's "illegal" batching operations and its "illegal" floodplain development,

the circuit court would have to determine which of Mountain View's operations and developments were, in fact, illegal. Doing so would require the circuit court to first determine the scope and nature of the legal nonconforming batch plant, which is the issue pending in the land use decisional process before the county. Under the principles in *Flight Shop, Inc.*, 277 Or App at 646, as long as land use "issues are being addressed by the land use decisional process, the circuit courts lack jurisdiction to consider them." We therefore conclude that the lower court correctly determined that it did not have subject matter jurisdiction over plaintiffs' first and second claims for relief.

Plaintiffs' third claim for relief presents a slightly different question. That claim is not an enforcement action against Mountain View. It is a claim against the county based on the allegation that the county failed to enforce its own land use regulations, but the claim suffers the same jurisdictional problem. As plaintiffs point out, we have recognized that the circuit courts may have jurisdiction over such claims. In *Doughton,* 90 Or App at 52-53, we concluded that the circuit court had jurisdiction under ORS 197.825(3)(a) (then numbered as subsection (4)(a)) over a petitioner's mandamus action that alleged that the county was engaged in an "ongoing failure to enforce its land use regulations." There is a significant difference, however, between the plaintiffs' claim in *Doughton* and plaintiff's claim in this case. As we later observed, the claim in *Doughton* was that "the county was not requiring compliance with conditions that it had established as part of a land use decision that it had already made and that was not subject to any further automatic consideration by the county itself." *Sauvie Island Agricultural v. GGS (Hawaii), Inc.,* 107 Or App 1, 6, 810 P2d 856 (1991). In *Doughton,* the relevant land use decisional process had ended. Here, defendants' various land use applications were still pending when plaintiffs brought this enforcement action on issues related to those applications.

Although plaintiff's third claim may be a declaratory claim, the form of the action is a distinction without a difference. In *Flight Shop, Inc.,* 277 Or App at 647, we explained that a circuit court does not have jurisdiction over a declaratory claim if (1) a related land use decisional

process is in progress and (2) the relief that a plaintiff has requested would require the circuit court to decide issues that could be decided in that land use decisional process. *Accord Department of Land Conservation and Development v. Benton County*, 27 LUBA 49 (1994) ("If the relief sought in a declaratory judgment proceeding requires that a land use decision be made, such relief is not available until the appropriate local government has rendered the required land use decision."). Here, the circuit court cannot grant plaintiffs' requested relief—an injunction directing the county to engage in "meaningful" enforcement—without considering matters that are pending in the land use decisional process. To determine what enforcement action would be "meaningful," the circuit court would be required to consider the severity and scope of Mountain View's alleged violations. At a minimum, that would require the circuit court to determine, first, the nature and scope of the original lawful nonconforming use and, second, the degree to which Mountain View has altered that use. Consequently, ORS 197.825(3)(a) does not provide the circuit court with jurisdiction over plaintiffs' third claim for relief.

For a similar reason, plaintiffs' fourth claim for relief fails, although plaintiffs rely on an alternate basis for jurisdiction and a variation on their argument. Under ORS 197.825(3)(b), the circuit court has jurisdiction "[t]o enforce [LUBA's] orders * * * in appropriate proceedings brought by the board or a party to the board proceeding resulting in the order." In the fourth claim, plaintiffs allege that, in *Rogue I*, "the Land Use Board of Appeals held that the asphalt batch plant, operated by Defendant [Mountain View] since 2001, is an unlawful alteration or expansion of a nonconforming use unless and until [Mountain View] can demonstrate and the County lawfully approves the alteration and/or expansion of the use pursuant to an application." Taking their interpretation a step further, plaintiffs assert that "[d]efendants have failed to carry out and comply with the terms of LUBA's Order by allowing the *continuation* of a use that has been determined to be *illegal*." (Emphasis added.) On that premise, plaintiffs prayed that the court should declare Mountain View to have failed to comply with LUBA's decision and that the court should impose an injunction to enforce

that decision. In plaintiffs' view, it would seem, enforcement would mean cessation of the use that is purported to be "illegal."[2]

The LUBA decision, however, made no final and definitive determination. Instead, LUBA remanded for consideration of Mountain View's efforts to verify its lawful nonconforming use and to secure a floodplain development permit. Further proceedings would determine the scope of the nonconforming use and, eventually, the permissibility of an alteration of that use.[3] LUBA did not determine the scope and nature of any land use violations occurring on Mountain View's property. Nor did LUBA direct the county to undertake any enforcement action against Mountain View. Consequently, plaintiffs' requested relief—an injunction requiring the cessation of a use assumed to be entirely "illegal"—implicates land use decisions yet to be made in pending land use proceedings before the county. The scope of what was permissible was still undetermined. For the same reasons as with the first three claims, the fourth claim would ask the circuit court to exceed its jurisdiction under ORS 197.825(3)(b).

Affirmed.

---

[2] We understand the fourth claim for relief to seek only an injunction requiring cessation of an "illegal" use—as opposed to seeking some other compliance with LUBA's order—because there is no dispute that Mountain View followed directives of the remand itself. That is, Mountain View had already done that which the decision directed: They had engaged in further proceedings contemplated by the remand.

[3] As explained in *Rogue II*, LUBA remanded to the county the issue of "the scope and nature of the nonconforming batch plant that existed on the property prior to its conversion to an asphalt batch plant in 2001."