No. 66 December 14, 2017 269

IN THE SUPREME COURT OF THE
STATE OF OREGON

ROGUE ADVOCATES
and Christine Hudson,
*Petitioners on Review,*

*v.*

BOARD OF COMMISSIONERS
OF JACKSON COUNTY
and Mountain View Paving, Inc.,
*Respondents on Review.*

(CC 14CV11829; CA A158485; SC S064105)

On review from the Court of Appeals.*

Argued and submitted March 8, 2017.

Maura C. Fahey, Crag Law Center, Portland, argued the cause and filed the briefs for petitioners on review. Also on the briefs was Ralph O. Bloemers.

Lynn R. Stafford, Oregonians in Action Legal Center, Tigard, argued the cause and filed the briefs for respondent on review Mountain View Paving, Inc. Also on the brief was David J. Hunnicutt.

No appearance on behalf of respondent on review Board of Commissioners of Jackson County.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, and Nakamoto, Justices.**

PER CURIAM

The petition for review is dismissed as moot.

Walters, J., filed a concurring opinion, in which Balmer, C. J., joined.

_____

 * On appeal from Jackson County Circuit Court, Timothy C. Gerking, Judge. 277 Or App 651, 372 P3d 587 (2016).

 ** Baldwin, J., retired March 31, 2017, and did not participate in the decision of this case. Brewer, J., retired June 30, 2017, and did not participate in the decision of this case. Flynn and Duncan, JJ., did not participate in the consideration or decision of this case.

## PER CURIAM

In this land use dispute, we allowed review to confront the distinction between circuit court jurisdiction to enforce local land use ordinances under ORS 197.825 (3)(a) and the exclusive jurisdiction of the Land Use Board of Appeals (LUBA) to review local land use decisions under ORS 197.825(1).[1] In 2014, plaintiffs Rogue Advocates and Christine Hudson (together, Rogue Advocates)[2] brought an action in circuit court premised on that court's jurisdiction to enforce Jackson County's land use ordinances. Rogue Advocates' complaint sought declaratory and injunctive relief in Jackson County Circuit Court against the Board of Commissioners of Jackson County (the county) and Mountain View Paving, Inc. (Mountain View Paving), alleging that Mountain View Paving was operating an asphalt batch plant that was prohibited by the county's land use ordinances if the owner had not first obtained both a floodplain development permit and formal verification from the county that the plant was a lawful nonconforming use of the property. At the time that Rogue Advocates filed their complaint, Mountain View Paving did not have the permit and verification that Rogue Advocates alleged were required.

---

[1] ORS 197.825 provides:

"(1) Except as provided in ORS 197.320 and subsections (2) and (3) of this section, the Land Use Board of Appeals shall have exclusive jurisdiction to review any land use decision or limited land use decision of a local government, special district or a state agency in the manner provided in ORS 197.830 to 197.845.

"* * * * *

"(3) Notwithstanding subsection (1) of this section, the circuit courts of this state retain jurisdiction:

"(a) To grant declaratory, injunctive or mandatory relief in proceedings arising from decisions described in ORS 197.015(10)(b) or proceedings brought to enforce the provisions of an adopted comprehensive plan or land use regulations; and

"(b) To enforce orders of the board in appropriate proceedings brought by the board or a party to the board proceeding resulting in the order."

[2] Christine Hudson owns and manages Mountain View Estates, a residential community for seniors adjacent to Mountain View Paving's asphalt batch plant site. Rogue Advocates is a nonprofit corporation that seeks to preserve productive rural lands and to promote urban centers in southern Oregon's Rogue Valley region. Rogue Advocates' members own homes and live in Mountain View Estates.

The county and Mountain View Paving contested circuit court jurisdiction. They explained that the owners of the plant had applied for the allegedly required verification and permit, and that the county, initially, had granted their applications.[3] Although LUBA had reversed the county's decisions and remanded for further consideration, the county and Mountain View Paving contended that the matter could or would be resolved by the county or through the LUBA review process. Therefore, they argued, LUBA had exclusive jurisdiction to decide the issues presented in Rogue Advocates' complaint. The circuit court granted motions filed by the county and Mountain View Paving to dismiss the circuit court action for lack of subject matter jurisdiction. Rogue Advocates appealed that decision to the Court of Appeals.

In January 2016, while Rogue Advocates' appeal was pending in the Court of Appeals, LUBA issued a final decision holding that Mountain View Paving's asphalt batch plant operation was not permissible under applicable Jackson County land use ordinances. *Meyer v. Jackson County*, __ Or LUBA __ (LUBA No. 2015-073, January 11, 2016). Mountain View Paving then ceased asphalt batching on the property and relocated its asphalt batch plant. After LUBA's order became final and, apparently, after Mountain View Paving ceased operating its asphalt batch plant, the Court of Appeals issued its decision in this case, affirming the ruling of the circuit court. *[Rogue Advocates v. Board of Comm. of Jackson County](#)*, 277 Or App 651, 372 P3d 587 (2016). This court then allowed Rogue Advocates' petition for review to consider whether the circuit court had had jurisdiction to consider Rogue Advocates' complaint.

In light of the fact that Mountain View Paving has ceased the activities that were identified by Rogue Advocates as the bases for its complaint, we asked the parties to brief the issue of whether the case before us is moot and, therefore, whether the petition for review should be dismissed.

---

[3] Paul and Kristen Meyer, the owners of Mountain View Paving, were the applicants for the permits. Rogue Advocates filed petitions for review of the county's decisions granting those permits with LUBA. Paul and Kristen Meyer intervened in those proceedings as respondents.

Whether a case is moot depends on whether a justiciable controversy exists. *Brummet v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993). In a declaratory judgment action like the present one, a justiciable controversy "must involve a dispute based on present facts rather than on contingent or hypothetical events." *TVKO v. Howland*, 335 Or 527, 534, 73 P3d 905 (2003). In a similar vein, this court has stated that a case is moot "[i]f, because of changed circumstances, a decision no longer will have a practical effect on or concerning the rights of the parties." *State v. Hemenway*, 353 Or 498, 501, 302 P3d 413 (2013) (internal quotation marks omitted). A case also is moot "when an event occurs that renders it impossible for the court to grant effectual relief." *Hamel v. Johnson*, 330 Or 180, 184, 998 P2d 661 (2000) (internal quotation marks and brackets omitted).

We conclude that the case is moot. In their complaint, Rogue Advocates contested Mountain View Paving's operation of an asphalt batch plant. Mountain View Paving is no longer operating that asphalt batch plant, states that it has no intention to do so in the future, and does not contend that it has a legal right to do so. Thus, a decision in this case will not have a practical effect on the parties, and this case is now moot.

However, this court is not necessarily required to dismiss moot cases, "at least not in 'public actions or cases involving matters of public interest.'" *Eastern Oregon Mining Association v. DEQ*, 360 Or 10, 15, 376 P3d 288 (2016) (quoting *Couey v. Atkins*, 357 Or 460, 520, 355 P3d 866 (2015)). Even if moot, such cases may be justiciable if the parties can satisfy the requirements set out in ORS 14.175. That statue allows a court to issue a judgment when the case is moot but the challenged act is capable of repetition yet is likely to evade judicial review and the other terms of the statute are met. That statute does not, however, require a court to issue a judgment in that circumstance. *Couey*, 357 Or at 522 (court has discretion to decide whether it is appropriate to adjudicate an otherwise moot case under the circumstances of the case). In this case, we decline to exercise that authority. The likelihood that a circuit court ruling denying jurisdiction in circumstances similar to these will evade review in this court is not so great as to justify our exercise of discretion to

continue to hear this case. We therefore hold that the case is moot and is not justiciable.[4]

The petition for review is dismissed as moot.

**WALTERS, J.,** concurring.

I concur in the court's decision to dismiss the petition for review in this case as moot and nonjusticiable, but write to call attention to the importance of the issue raised in this case and the need for its correct resolution. In my view, when a landowner uses land in violation of a local land use regulation or Land Use Board of Appeals (LUBA) order, a circuit court has jurisdiction to issue an injunction prohibiting that illegal use. The fact that the landowner may be entitled to seek, or may in fact be seeking, permission to engage in that use may affect the court's exercise of its jurisdiction, but it does not operate as a jurisdictional bar. As I will explain, LUBA's exclusive jurisdiction to *review* local land use decisions may counsel against, but does not always foreclose, circuit court jurisdiction to *enforce* existing law.

In this case, the Court of Appeals relied on the following rule to conclude that the circuit court did not have subject matter jurisdiction to enjoin Mountain View Paving's asphalt batch plant operation: "'At both ends of the spectrum and all points along it, if local or LUBA jurisdiction exists or has been exercised, there is no circuit court jurisdiction to render a decision on matters that were or could have been resolved through the local or LUBA process.'" *Rogue Advocates v. Board of Comm. of Jackson County*, 277 Or App 651, 659-60, 372 P3d 587 (2016) (quoting *Doney v. Clatsop Co.*, 142 Or App 497, 502, 921 P2d 1346 (1996)). That rule is not found in the controlling statute, ORS 197.825, and it wrongly precludes circuit courts from determining whether to exercise, and in the certain cases, from exercising, their statutory authority to enforce local land use ordinances and LUBA orders.

---

[4] The case already may have been moot when the Court of Appeals issued its decision. If so, then the question arises whether it would be appropriate for this court to vacate the Court of Appeals' decision. Vacatur is an extraordinary, discretionary remedy, to be granted only when a party shows an "equitable entitlement." *Kerr v. Bradbury*, 340 Or 241, 250, 131 P.3d 737 (2006). Neither party has requested vacatur in this case and we decline to exercise our discretion to require it.

ORS 197.825(1) grants LUBA exclusive jurisdiction to *review* land use decisions:

"(1)   Except as provided in ORS 197.320 and subsections (2) and (3) of this section, *the Land Use Board of Appeals shall have exclusive jurisdiction to review any land use decision or limited land use decision of a local government*, special district or a state agency in the manner provided in ORS 197.830 to 197.845."

(Emphasis added.) ORS 197.825(3) provides that, notwithstanding subsection (1), circuit courts retain jurisdiction to *enforce* land use regulations and LUBA orders:

"(3)   Notwithstanding subsection (1) of this section, *the circuit courts of this state retain jurisdiction*:

"(a)   To grant declaratory, injunctive or mandatory relief in proceedings arising from decisions described in ORS 197.015(10)(b) or *proceedings brought to enforce the provisions of an adopted comprehensive plan or land use regulations*; and

"(b)   To *enforce orders of the board* in appropriate proceedings brought by the board or a party to the board proceeding resulting in the order."

(Emphasis added.)

The rule stated by the Court of Appeals reflects a view that LUBA jurisdiction under subsection (1) and circuit court jurisdiction under subsection (3) are mutually exclusive—that is, that circuit court jurisdiction does not exist when a local government has made or could make a land use decision that is or could be subject to LUBA review. For reasons that I will explain, I do not agree. I read ORS 197.825 to allocate jurisdiction between LUBA and the courts, but not to preclude its contemporaneous exercise.

Before the legislature created LUBA in 1979,[1] circuit courts had had broad jurisdiction to decide land use disputes, including authority to review local land use determinations. *See* Edward J. Sullivan, *From Kroner to Fasano: An Analysis of Judicial Review of Land Use Regulation in Oregon*, 10 Willamette L J 358 (1974) (discussing evolution

---

[1] Or Laws 1979, ch 772, § 2.

of standards and form of circuit court review of local agency land use decisions from 1925 to 1974); Edward J. Sullivan, *Reviewing the Reviewer: The Impact of the Land Use Board of Appeals on the Oregon Land Use Program, 1979-1999*, 36 Willamette L Rev 441, 445 (2000) (review of local land use decisions was once the province of trial courts). In 1983, the legislature enacted ORS 197.825, which endowed LUBA with "exclusive" jurisdiction to "review" land use decisions. Or Laws 1983, ch 827, § 30. However, as described in greater detail below, when it did so, it provided that circuit courts continue to "retain" jurisdiction to "enforce" land use regulations by granting declaratory, injunctive, or mandatory relief. *Id*. Thus, the legislature transferred to LUBA a part of the authority that circuit courts previously had exercised— the role of reviewing land use decisions—but specifically provided that circuit courts retain other aspects of its preexisting authority—authority to grant declaratory, injunctive, or mandatory relief in three categories of proceedings.

The first category of proceedings in which the circuit courts retain jurisdiction is described in the first prong of ORS 197.825(3)(a): "proceedings arising from decisions described in ORS 197.015(10)(b)." The proceedings in that category do not involve "land use decisions" as that term is defined in the statute. ORS 197.015(10) defines the phrase "land use decision." Paragraph (10)(b) lists various types of nondiscretionary local government land use determinations that are specifically excluded from the definition of "land use decision." Thus, the first category of proceedings in which the circuit court retains jurisdiction involves determinations that are not subject to LUBA review. Only the circuit courts have jurisdiction to review "decisions described in ORS 197.015(10)(b)."

But that is not the only instance in which circuit courts retain jurisdiction. The second prong of ORS 197.825(3)(a) describes a second category of proceedings over which circuit courts retain jurisdiction: proceedings brought to "enforce the provisions of an adopted comprehensive plan or land use regulations." A third category of proceedings over which circuit courts retain jurisdiction is described in ORS 197.825(3)(b). Like the second prong of

ORS 197.825(3)(a), ORS 197.825(3)(b) also provides that circuit courts retain enforcement jurisdiction—in proceedings brought "[t]o enforce orders of [LUBA]."

In dividing responsibility for "review" and "enforcement" as I have just described, the legislature allocated between the courts and LUBA the jurisdiction that previously had belonged solely to the courts. Nothing in the statutory scheme, however, suggests that the legislature intended to provide that LUBA's exercise of its review jurisdiction (or the potential for its exercise) bars circuit courts from exercising their enforcement jurisdiction. LUBA has exclusive jurisdiction to "review" land use decisions, but the exercise of that jurisdiction (or the potential for its exercise) does not give it exclusive jurisdiction over all matters related to the use of land.

As I read ORS 197.825, a circuit court would have jurisdiction to declare that a landowner's use of property is in violation of a land use regulation or a LUBA order and to enjoin that use, even if the landowner could, in the future, obtain a land use decision from a local government or LUBA that would permit that use. The commencement of an action in circuit court would not preclude the landowner from seeking such permission. Nothing in ORS 197.825 limits LUBA review jurisdiction to instances in which there is no pending or potential enforcement proceeding before a circuit court. And the obverse is also true: nothing in ORS 197.825 limits the circuit court's enforcement jurisdiction to situations in which there is no pending or potential land use proceeding before a local governmental body or LUBA. Nor does the wording of the statute in any way suggest that parties must exhaust their rights or take advantage of opportunities to obtain local governmental land use decisions or review of such decisions by LUBA before bringing circuit court enforcement actions.

That does not mean, however, that the existence of LUBA review jurisdiction does not affect a court's exercise its enforcement jurisdiction. As I will explain, three related principles, derived from this court's decisions and the structure of Oregon land use statutes, impose significant limitations on the exercise of circuit court authority:

the principle that a party cannot, in the guise of enforcement, seek "review" of a land use decision; the doctrine of primary jurisdiction; and the principle that a local government's interpretation of its own regulations must be given effect.

This court's decision *Wright v. KECH-TV*, 300 Or 139, 707 P2d 1232 (1985), is illustrative of the first principle. In *Wright*, the plaintiffs brought an action in circuit court to compel the removal of a television station's transmission tower on the ground, among others, that the county's issuance of permits to the station violated statewide planning goals. The circuit court dismissed the complaint for lack of subject matter jurisdiction on the ground that the complaint presented land use questions within LUBA's exclusive jurisdiction. The Court of Appeals affirmed. This court affirmed the decision of the Court of Appeals and the ruling of the circuit court, holding that LUBA had exclusive jurisdiction over the matter, because the "thrust of the complaint" was a challenge to the issuance of the permits. *Id*. at 147. In other words, this court determined that, in the guise of enforcement, what plaintiffs really sought was judicial review of the county's land use decision. LUBA, not the court, has exclusive jurisdiction in that instance.

The second principle—the doctrine of primary jurisdiction—comes into play "when a court decides that an administrative agency, rather than a court of law, initially should determine the outcome of a dispute or one or more issues within that dispute that fall within the agency's statutory authority." *Boise Cascade Corp. v. Board of Forestry (S42159)*, 325 Or 185, 192, 935 P2d 411 (1997). Courts invoke primary jurisdiction when it appears that an agency's disposition of one or more issues before the court will assist the court in resolving the case before it. *Id*. As this court explained in *Boise Cascade*, there are two types of primary jurisdiction: statutory primary jurisdiction, in which a statute requires courts to apply primary jurisdiction to a class of cases, and judge-made primary jurisdiction, in which the scope and effect are determined through judicial reasoning. *Id*. at 191-92. Neither ORS 197.825 nor any other statute requires courts to await LUBA review before exercising their enforcement authority. Thus, in exercising its

enforcement jurisdiction, a circuit court would be required to determine the extent to which primary jurisdiction comes into play by considering the nature of the parties' dispute and the scope of the agency's authority. *Id*. at 193.

As this court explained in *Boise Cascade*, invocation of the doctrine of primary jurisdiction does not require dismissal of a circuit court complaint unless the court determines that an agency has primary jurisdiction over an entire dispute. *Id*. In other circumstances, a court has discretion whether to invoke primary jurisdiction and defer decision in the action until the agency has addressed a particular issue. *Id*. at 192. There, the court must balance considerations in favor of allocating initial decision-making authority to the agency against the likelihood that application of agency deference will unduly delay resolution of the dispute before the court. *Id*. Thus, in a land use proceeding, the doctrine of primary jurisdiction may counsel that a court refrain from exercising its enforcement jurisdiction until local and LUBA review are complete. In appropriate circumstances, however, a court may decide to exercise its discretion to impose a remedy pending the completion of local or LUBA review.

The third applicable principle that limits a circuit court's exercise of enforcement jurisdiction is that a court does not have unfettered authority to reach its own conclusions about the meaning of applicable land use regulations. If LUBA has interpreted such regulations, a court's authority to reach a different conclusion is limited. *See Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994) (courts cannot overrule agency's interpretation of its own rule unless agency's plausible interpretation is shown to be inconsistent with wording of the rule, its context, or other source of law). The same is true when a county has interpreted its own regulations or ordinances. *Siporen v. City of Medford*, 349 Or 247, 257-58, 243 P3d 776 (2010) (when governing body is responsible for enacting ordinance, it may be assumed to have better understanding than LUBA or the courts of its intended meaning); *see also, Clark v. Jackson County*, 313 Or 508, 515, 836 P2d 710 (1992) (LUBA must affirm county's interpretation of its own ordinances unless LUBA determines that county's interpretation is inconsistent with express language of

ordinance or its apparent purpose or policy). In other words, the courts do not have *carte blanche* authority to interpret local land use regulations or ordinances; they must give effect to interpretations of such laws provided by LUBA or local governments.

Those principles place significant limits on a circuit court's enforcement jurisdiction, but they do not bar its exercise. In this case, the proper question for the circuit court and the Court of Appeals was not whether "local or LUBA jurisdiction exists or has been exercised," but rather, as this court indicated in *Wright*, 300 Or at 147, whether the "thrust of" Rogue Advocates' complaint was to obtain enforcement of the county's land use ordinances that prohibited Mountain View Paving from conducting an asphalt batch operation without the permits and approvals required to lawfully engage in that operation.

Here, Rogue Advocates alleged in their complaint that Mountain View Paving operated an asphalt batch plant on property that is located in an area in which such a use is prohibited absent both county verification as a lawful nonconforming use and a floodplain development permit. Rogue Advocates further alleged that, at the time the complaint was filed, Mountain View Paving did not have the required verification or permit and that its use therefore violated county ordinances. Rogue Advocates sought a declaration of the violation and an injunction ordering Mountain View Paving to cease the asphalt batch plant operation unless and until the required verifications and permit were issued. Thus, the complaint sought to enforce existing Jackson County land use regulations and not to foreclose either a decision by the county granting those approvals or LUBA's review of the county's action. The circuit court could have resolved the issue actually presented in Rogue Advocates' complaint—whether Mountain View Paving could operate the asphalt batch plant without the nonconforming use verification and floodplain development permit—without considering whether Mountain View Paving eventually would obtain the allegedly required verification and permit. Rogue Advocates did not ask the circuit court to determine whether the county *should* issue the required approvals. The county had authority to make that decision as an initial matter,

and LUBA had exclusive jurisdiction to review the decision that the county made. But, in my view, the existence of that review authority did not deprive the circuit court of subject matter jurisdiction to consider whether to enjoin Mountain View Paving's operation of the asphalt batch plant during the completion of those proceedings.

I understand that circuit court enforcement jurisdiction is narrow and that its exercise is subject to limitation. Nonetheless, that judicial authority permits a court to require adherence to the rule of law, and I urge an interpretation of ORS 197.825 that recognizes its significance.

Balmer, C. J., joins in this concurring opinion.