Argued and submitted November 6, 2019, reversed and remanded with instructions to dismiss petitions December 30, 2020

TPC, LLC,
an Oregon limited liability company,
*Petitioner,*
*and*

Taylor A. HYDE
and John L. Hyde,
as General Partners of the
Hyde Family Limited Partnership,
*Petitioners-Respondents,*
*v.*

OREGON WATER RESOURCES DEPARTMENT
and Danette Watson, in her official capacity
as District #17 Watermaster,
*Respondents-Respondents,*
*and*

KLAMATH TRIBES,
*Intervenor-Appellant.*

TPC, LLC,
an Oregon limited liability company,
*Petitioner,*
*and*

Taylor A. HYDE
and John L. Hyde,
as General Partners of the
Hyde Family Limited Partnership,
*Petitioners-Respondents,*
*v.*

OREGON WATER RESOURCES DEPARTMENT
and Danette Watson, in her official capacity
as District #17 Watermaster,
*Respondents-Appellants,*
*and*

KLAMATH TRIBES,
*Intervenor.*

Marion County Circuit Court
16CV27427, 17CV26962; A167380

482 P3d 121

This case involves final orders issued in 2016 and 2017 by the Oregon Water Resources Department (OWRD) that curtailed petitioners' use of their surface water rights in the Williamson River, which is located in the Klamath Basin, in favor of senior water rights held by the Klamath Tribes and the United States as trustee for the Klamath Tribes. The parties' water rights in the Williamson River were established as determined claims in a 2013 OWRD final order that adjudicated water right claims in the Klamath Basin. Exceptions to that 2013 order, including exceptions filed by the parties in this case, are currently on review in Klamath County Circuit Court under the process provided for in ORS chapter 539. Petitioners sought judicial review of the 2016 and 2017 curtailment orders in Marion County Circuit Court, arguing that a provision in a stipulation entered into by petitioners, the United States, the Klamath Tribes, and OWRD in the Klamath Basin adjudication—a provision that was not incorporated into the 2013 adjudication order—prohibited OWRD from issuing the 2016 and 2017 curtailment orders. Marion County Circuit Court concluded that OWRD was subject to the provision in the stipulation, as urged by petitioners, and remanded the curtailment orders. *Held*: Marion County Circuit Court did not have subject matter jurisdiction over petitioners' claim. Exclusive subject matter jurisdiction over the precise claim brought by petitioners was with Klamath County Circuit Court under the process in ORS chapter 539.

Reversed and remanded with instructions to dismiss petitions.

Thomas M. Hart, Judge.

Edmund Clay Goodman argued the cause for appellant Klamath Tribes. Also on the briefs was Hobbs Straus Dean & Walker LLP.

Dominic M. Carollo argued the case for respondents John L. Hyde and Taylor A. Hyde. Also on the brief were Nathan Ratliff and Yockim Carollo LLP.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondents Oregon Water Resources Department and Danette Watson. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Carson L. Whitehead, Assistant Attorney General, argued the cause for appellants Oregon Water Resources Department and Danette Watson. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Dominic M. Carollo argued the case for respondents John L. Hyde and Taylor A. Hyde. Also on the brief were Nathan Ratliff and Yockim Carollo LLP.

James A. Maysonett argued the cause on behalf of *amicus curiae* United States. Also on the brief were Billy J. Williams, Kelly Zusman, Jeffrey Bossert Clark, and Eric Grant.

Before Ortega, Presiding Judge, and Shorr, Judge, and James, Judge.

ORTEGA, P. J.

Reversed and remanded with instructions to dismiss petitions.

**ORTEGA, P. J.**

This case involves final orders issued in 2016 and 2017 by an Oregon Water Resources Department (OWRD) watermaster[1] which curtailed petitioners'[2] use of their surface water right in the Williamson River, which is located in the Klamath Basin, in favor of senior water rights held by the Klamath Tribes and the United States as trustee for the Klamath Tribes. The parties' water rights were established as determined claims in a 2013 OWRD final order that adjudicated water right claims in the Klamath Basin. That 2013 adjudication order is currently on review in Klamath County Circuit Court. To settle contests to petitioners' water right claim brought by the United States and the Klamath Tribes in that adjudication, petitioners, the United States, and the Klamath Tribes entered into a stipulation, which OWRD also signed (the Hyde Agreement). The OWRD adjudicator incorporated part of the Hyde Agreement into the 2013 adjudication order.

In 2016 and 2017, the Klamath Tribes made a call for water to the district watermaster, which led to the orders at issue in this case that curtailed petitioners' use of their water right. Petitioners sought judicial review of those curtailment orders in Marion County Circuit Court, arguing that a provision in the Hyde Agreement that the adjudicator did not incorporate into the 2013 adjudication order prohibited OWRD from issuing the curtailment orders. Petitioners did not join the Klamath Tribes or the United States in their petitions, and the Klamath Tribes intervened for the limited purpose of seeking to dismiss the action for failure to join the Tribes. Marion County Circuit Court permitted the Tribes to intervene but denied the Tribes' motion to dismiss and, on cross-motions for summary judgment by petitioners and OWRD, concluded that OWRD was subject to the provision in the Hyde Agreement, as urged by petitioners, and remanded the curtailment orders.

---

[1] OWRD and the watermaster, in her official capacity, are both named parties in this case. For ease of reference, we refer only to OWRD throughout this opinion.

[2] The parties have stipulated to the dismissal of petitioner TPC, LLC, as a respondent on appeal, and it is no longer a party to this case. Our use of the term "petitioners" throughout this opinion refers only to the Hyde petitioners.

OWRD appeals from that judgment, arguing that it is not bound by the Hyde Agreement. The Klamath Tribes also appeal, arguing that Marion County Circuit Court erred in denying their motion to dismiss. Additionally, the United States filed an *amicus* brief on appeal, taking up the argument made by OWRD below that Marion County Circuit Court lacked subject matter jurisdiction over petitioners' claim, because, under ORS chapter 539, exclusive jurisdiction for the particular claim they asserted rests in Klamath County Circuit Court, where the Klamath Basin adjudication order is currently being litigated by the parties in this case. We conclude that Marion County Circuit Court did not have subject matter jurisdiction over petitioners' claim and, thus, reverse and remand with instructions to Marion County Circuit Court to dismiss the petitions.

The relevant background facts are undisputed. In 2013, under the process set forth in ORS chapter 539, the director of OWRD, through an adjudicator, issued a final order that adjudicated about 730 surface water right claims in the Klamath River Basin (the KBA order). The Klamath River Basin adjudication (the KBA or the adjudication) included surface water right claims in the Williamson River and its tributaries, which feed into Upper Klamath Lake.[3] Petitioners' determined claim, Claim 33, is "at and near the headwaters of the Williamson River" with a priority date in 1864. The determined claims of the Klamath Tribes and the United States, as trustee for the Klamath Tribes, include Claims 625 through 629 and 631 through 640, which are for instream flows in the Williamson River and its tributaries, and Claim 623, which is for maintenance of minimum water levels in Klamath Marsh, into which the Williamson River flows. All of those claims have a priority date of "time

---

[3] The KBA order describes the Williamson River:

"The Williamson River rises in large springs along the toe of Booth Ridge in the northeasterly portion of the basin. It flows northward for some distance before turning west and entering Klamath Marsh. From Klamath Marsh it flows southerly into Upper Klamath Lake. Between Klamath Marsh and Upper Klamath Lake, the Williamson has two significant tributaries. The first, Spring Creek, which enters the Williamson above the town of Chiloquin, exhibits almost constant flow; the second, Sprague River, joins the Williamson just sought of Chiloquin."

immemorial."[4] Thus, under the KBA order, the Klamath Tribes' water rights have seniority over petitioners' water right.[5] Many parties to the adjudication filed exceptions to the KBA order, including petitioners, the United States, and the Klamath Tribes, which are discussed below. Those exceptions are currently on review in Klamath County Circuit Court.

During the adjudication, the United States and the Klamath Tribes contested petitioners' water right claim (Claim 33). In 2005, petitioners, the United States, the Klamath Tribes, and OWRD signed a stipulation to settle those contests to petitioners' claim—the Hyde Agreement. The Hyde Agreement was a filed document in that contested case and is headed with the caption of the contested case, case number, claim number, contest numbers, and the pleading title, "Stipulation to Resolve Contests." The opening line of the document states, "Claimants Dayton and Gerda Hyde ('Claimants'), Contestant United States, and Contestant Klamath Tribes ('Tribes'), collectively referred to as the 'Parties,' and the Oregon Water Resources Department ('OWRD'), stipulate and agree as follows." (Footnote omitted.) After setting forth stipulated facts in section A, the Hyde Agreement provides, in part, in section B:

"1. (a) Claimants, Contestants and OWRD agree that Claim 33 should be approved by the Adjudicator as described below: [setting out a description of the water right]

"(b) The exercise of the water right described herein is subject to maintaining a flow of at least one-half of the

---

[4] The Klamath Tribes' water rights to instream flow in the Williamson River watershed to support hunting and fishing were confirmed in its 1864 Treaty with the United States and "necessarily carry a priority date of time immemorial." *United States v. Adair*, 723 F2d 1394, 1414 (9th Cir 1983), *cert den*, 467 US 1252 (1984).

[5] Once the KBA order issued, OWRD had regulatory authority over the adjudicated claims, including authority to regulate junior water users in favor of senior water users, as required by Oregon law, which has adopted the prior appropriation system. *See, e.g.*, ORS 540.045(1) (describing watermasters' regulation duties); ORS 539.130(4) (providing that OWRD's determination orders are "in full force and effect"); ORS 539.170 (providing that, pending the circuit court judgment, division of water on the stream shall be made in accordance with OWRD's determination orders).

total flow in the Williamson River upstream of the current north boundary of Claimants' property ***. ***

"(c) Claimants' use of their water right upstream of the current north boundary of Claimants' property *** will not be curtailed in favor of any senior water right now held or later acquired by the United States or the Klamath Tribes. The United States and the Klamath Tribes agree that they will not place any call on the Williamson River that will result in the curtailment of Claimants' use of water in excess of the principles set forth in paragraph B.1.(b), above. To ensure implementation of this provision, the United States and the Klamath Tribes hereby request that the Adjudicator's Findings of Fact and Order of Determination place a condition implementing the principles set forth in paragraph B.1.(b), above, thereby preventing exercise, upstream of the current north boundary of Claimants' property, *** of any rights adjudicated in favor of the United States on behalf of the Klamath Tribes in Claim No. 633. The United States and the Klamath Tribes also request that the same provision be placed on any rights adjudicated in favor of the Klamath Tribes with respect to the portion of the Klamath Tribes' Claim No. 612 that incorporates Claim 633 filed by the United States on behalf of the Klamath Tribes.

"(d) Claimants and Contestants anticipate that it will be unnecessary to invoke the provisions of paragraph B.1.(b), above, due to the Conservation Easement discussed below and attached hereto as Exhibit 2. However, to the extent that one or more of the Parties determines that regulation of the river is necessary, such regulation will be conducted subject to the availability of the watermaster to carry out this work. ***

"(e) Claimants agree to grant to the Tribes a Conservation Easement on the property above the boundary described in paragraph B.1.(b). *** Enforcement of any provision of the Conservation Easement will be done through proceedings of the Easement itself, and will not be cause for filing exceptions in the Circuit Court to the Adjudicator's findings of fact and order of determination. ***

"(f) Claimants also hold Water Right Certificates Nos. 37002 and 8615. Claimants do not intend to exercise their water rights under these Certificates in a manner so as to

cause depletion of water in the Williamson River in amounts greater than those identified in paragraph B.1.(b). To ensure that such a result does not occur, Claimants hereby file Affidavits of Diminution with OWRD, and request that Certificate Nos. 37002 and 8615 be diminished in accordance therewith. * * *

"(g) Claimants also agree that they will not exercise any water rights that they may hereafter acquire or receive in such a manner so as to cause depletion of water in the Williamson River in amounts greater than those identified in paragraph B.1.(b). To ensure that such a result does not occur, claimants hereby agree to make appropriate requests to OWRD to place conditions on such right(s) necessary to prevent such exercise.

"2. The Parties agree that under the terms and provisions of this Stipulation, the Contests have been satisfactorily resolved, and such resolution ends the need for further proceedings before the Administrative Law Judge on the Contests.

"3. Based on the Stipulation of the Parties that Claim 33 and the Contests can be resolved without the need for further proceedings, OWRD adjudication staff hereby recommends to the Adjudicator that Claim 33 be withdrawn from the Office of Administrative Hearings. OWRD adjudication staff further recommends that Claim 33 be approved in the Findings of Fact and Order of Determination issued by the Adjudicator in accordance with the terms of Section B.1. above.

"4. If the Finding[s] of Fact and Order of Determination issued by the Adjudicator for Claim 33 does not conform to the terms set forth in paragraph B.1., above, the Parties reserve any rights they may have to file exceptions to the Findings of Fact and Order of Determination as to Claim 33 in the Circuit Court for Klamath County, and reserve any rights they may have to participate in any future proceedings authorized by law concerning Claim 33."

In the determination order for Claim 33, the adjudicator determined with respect to the Hyde Agreement as follows:

"The [Hyde] Agreement executed between the Claimants, OWRD, the United States of America, and the Klamath Tribes is adopted and incorporated as if set forth fully

herein, with the exception of paragraphs B.1.(c), B.1.(d), B.1.(e), B.1.(f), and B.1.(g); these paragraphs are not pertinent to the determination of a water right claim."

Thus, the KBA order established petitioners' water right as described in the Hyde Agreement in B.1.(a) and with the limitation set out in B.1.(b), which was incorporated into the determined water right as a "further limitation." However, none of the other paragraphs in section B.1. were incorporated into any water right established under the KBA order.

As noted above, petitioners, the United States, and the Klamath Tribes filed exceptions to the KBA order. Petitioners filed exceptions to the Tribes' established claims in the Williamson River, taking exception to the omission of a limitation on the Tribes "to not exercise the rights held or acquired by [the Tribes] in a manner that will curtail [petitioners'] exercise of the rights held by them as described and limited in" the Hyde Agreement. As relevant here, the United States filed exceptions to petitioners' established claim, excepting to parts of the determination as unsupported in the record, and the Tribes filed a request to also be heard on the United States' exception. The exceptions to the KBA order are currently being litigated in Klamath County Circuit Court.

In 2016 and 2017, the Klamath Tribes called on the OWRD watermaster for the district to enforce the Tribes' senior water rights in the upper Williamson River and Klamath Marsh, because instream flows and water levels in the marsh were below or projected to fall below the established levels for the Tribes' claims. *See* ORS 540.045 (duties of watermasters). The watermaster then issued final orders in other than contested cases in 2016 and 2017 that ordered petitioners to cease all use of water from the Williamson River. Those are the orders at issue in the case. Petitioners sought review of those orders in Marion County Circuit Court under ORS 536.075[6] and ORS 183.484, which governs

---

[6] ORS 536.075 provides, in part:

"(1) Any party affected by a final order other than contested case issued by the Water Resources Commission or Water Resources Department may appeal the order to the Circuit Court of Marion County or to the circuit court of the county in which all or part of the property affected by the order is

judicial review of final orders in other than contested cases. Petitioners sought review on the basis that OWRD was barred by the Hyde Agreement from enforcing the Klamath Tribes' call for water.[7] We describe petitioners' petitions in more detail below in our analysis.

The Klamath Tribes filed a limited motion to intervene for the purpose of bringing a motion to dismiss for failure to join the Tribes in the petitions as a necessary and indispensable party that cannot be joined due to its sovereign immunity. Marion County Circuit Court granted that limited motion to intervene, but denied the Klamath Tribes' motions to dismiss, concluding that the Tribes are not an indispensable party.[8] OWRD also brought a motion to dismiss, arguing that Marion County Circuit Court lacked subject matter jurisdiction, because exclusive jurisdiction rested in Klamath County Circuit Court, where the exceptions to the KBA order were being heard. Marion County Circuit Court denied that motion.

During the litigation of the Klamath Tribes' motion to dismiss, petitioners for the first time asserted that the Hyde Agreement was an enforceable "rotation agreement" under ORS 540.150 and OAR 690-250-0080.[9] As a result,

---

situated. The review shall be conducted according to the provisions of ORS 183.484, 183.486, 183.497 and 183.500. ***

"*****

"(7) The provisions of this section shall not apply to any proceeding under ORS 537.670 to 537.695 or ORS chapter 539."

[7] Petitioners also alleged a claim for relief on the basis that OWRD's enforcement of the Klamath Tribes' call for water was futile under OAR 690-250-0020. Petitioners dropped that claim from both of their petitions.

[8] Petitioners' 2016 and 2017 petitions for judicial review of the curtailment orders raised nearly identical claims, and the Klamath Tribes brought identical motions to intervene and to dismiss in those proceedings. Marion County Circuit Court later consolidated the review of the 2016 and 2017 curtailment orders, resulting in a general judgment for both matters.

[9] ORS 540.150 provides:

"To bring about a more economical use of the available water supply, water users owning lands to which are attached water rights may rotate in the use of the supply to which they may be collectively entitled. Whenever two or more water users notify the watermaster that they desire to use the water by rotation, and present a written agreement as to the manner of rotation, the watermaster shall distribute the water in accordance with the written agreement."

the Tribes provided notice to the OWRD watermaster that it was voluntarily terminating any such claimed rotation agreement, as allowed by OAR 690-250-0080(2). The United States also provided an acknowledgement of the Tribes' termination and provided its own notice of termination to the watermaster.

Petitioners and OWRD then filed cross-motions for summary judgment. OWRD reasserted its argument that Marion County Circuit Court lacked subject matter jurisdiction over petitioners' claim and, separately, argued that OWRD could not be compelled to enforce a provision in the Hyde Agreement. Petitioners argued that the Hyde Agreement was a written agreement for the distribution of water (a "rotation agreement") under ORS 540.150 that the watermaster had to follow and that OWRD had agreed in writing to not enforce a call for water by the Tribes against petitioners. Marion County Circuit Court denied OWRD's motion and granted petitioners' motion. That court entered a general judgment that provided, in relevant part:

> "2. The Court has jurisdiction, pursuant to ORS 183.484, to review the 2016 and 2017 Final Orders

---

OAR 690-250-0080 provides:

"(1) Appropriators may rotate use of the supply to which they may be collectively entitled. The nature of potential agreements are subject to the limitations in section (3) of this rule.

"(2) An agreement shall identify the duration of the agreement which shall be no less than one irrigation season. The agreement shall not be terminated within an irrigation season, and the rotation agreement shall be signed by all participants and dated. A copy of the agreement shall be filed with the watermaster for the area. Unless the rotation agreement provides otherwise, any member of the agreement may notify the watermaster after the end of the irrigation season, and before the beginning of the next season's use, that they are terminating the agreement.

"(3) A watermaster shall distribute water only under those enforceable agreements that include the provisions of section (2) of this rule. A watermaster shall not implement a rotation agreement that violates existing water statutes, court decrees, instream water rights, minimum flows, other rules of the Commission, or interferes with the rights of any appropriator not a member of such agreement. If distribution of water by the rotation agreement requires substantially more of the watermaster's time than distribution among the relative priorities, then the watermaster may require payment by the appropriators for an assistant watermaster, as described in ORS 540.100.

"(4) The agreement may contain language describing how a call from an appropriator or minimum flow senior to one or more appropriators in the rotation will be honored."

providing that Petitioners could not divert water from the Williamson River in 2016 and 2017.

"3. OWRD is a party to the Hyde Agreement and is bound by its terms.

"4. The Hyde Agreement qualifies as a rotation agreement pursuant to ORS 540.150 and OAR 690-250-0080.

"5. As a contract signed by the agency, the Hyde Agreement is a final order as defined in ORS 183.310(6)(b).

"6. The Hyde Agreement is enforceable by OWRD, both (1) as a rotation agreement pursuant to ORS 540.150 and OAR 690-250-0080 and, independently, (2) as a final order under ORS 183.310(6)(b) that is binding on OWRD.

"* * * * *

"8. The Final Orders are unlawful because they violate the terms of the Hyde Agreement.

"* * * * *

"13. The 2016 and 2017 Final Orders are hereby REMANDED to OWRD WITH INSTRUCTIONS that OWRD comply with the terms of the Hyde Agreement, such that, so long as the Hyde's use of their water rights does not exceed one-half of the total flow in Williamson River upstream of the north boundary of Claimants' property, OWRD will not enforce any water rights now held or later acquired by the United States or the Klamath Tribes, except as provided for under Section B.1.(d) of the Hyde Agreement, if enforcement of such water rights would result in curtailment of the Hyde's use of their water right upstream of the current north boundary of their property, as described in the Hyde Agreement."

In addressing the appeal of that judgment, we begin with the issue of subject matter jurisdiction. "Subject matter jurisdiction is the authority to deal with the general subject involved." *State v. Murga*, 291 Or App 462, 466, 422 P3d 417 (2018). "Subject matter jurisdiction exists when the constitution, the legislature, or the common law has directed a specific court to do something about a specific kind of dispute." *Id.* "Circuit courts have subject matter jurisdiction over all actions, unless a statute or rule of law divests them of jurisdiction." *Id.* A lack of subject matter jurisdiction can be raised at any time. *Id.* at 465. "If a court lacks subject

matter jurisdiction over a claim brought before it, it must dismiss the proceeding." *Kleikamp v. Board of Commissioners of Yamhill County*, 301 Or App 275, 282, 455 P3d 546 (2019).

Here, the issue is whether Marion County Circuit Court lacked subject matter jurisdiction because exclusive jurisdiction to decide the precise issue raised by the petitions for judicial review of the curtailment orders rested in Klamath County Circuit Court, where the KBA judicial review was already ongoing. To address that issue, we first provide an overview of the applicable statutory provisions.

As described, this case involves enforcement of the distribution of water on the Williamson River, which was done through the watermaster's curtailment orders, which, in turn, were OWRD final orders in other than contested cases. ORS 536.075(1). For such final orders, ORS 536.075 provides that a "party affected by a final order other than contested case" may appeal that order in Marion County Circuit Court, or in the court where the affected property is located, and that "[t]he review shall be conducted according to the provisions of ORS 183.484, 183.486, 183.497 and 183.500." ORS 536.075(1). ORS 536.075(5) provides that the filing of the petition for judicial review stays enforcement of the order, "unless the commission or the department determines that substantial public harm will result if the order is stayed." The review provided for in ORS 536.075 "shall not apply to any proceeding under ORS 537.670 to 537.695 or ORS chapter 539." ORS 536.075(7).

The KBA and judicial review of the KBA order are governed by ORS chapter 539, which provides the procedure for general stream adjudications, such as the KBA. *See* ORS 539.005(1) ("The Legislative Assembly declares that it is the purpose of this chapter to set forth the procedures for carrying out a general stream adjudication in Oregon."). As such, the determinations from the KBA cannot be reviewed under the review mechanism provided for in ORS 536.075. Instead, ORS chapter 539 sets out the exclusive judicial review mechanism for such an order. As part of the notice OWRD must provide to claimants or other parties of the right to inspect evidence for a general stream adjudication, the OWRD "shall also state in the notice the county

in which the determination will be heard by the circuit court; provided, that the cause shall be heard in the county in which the stream or some part thereof is situated." ORS 539.090. Then, after the OWRD issues an order of determination of the water rights to the stream, such as the KBA order, OWRD is required to gather all the original evidence and file it with the order in the circuit court "wherein the determination is to be heard." ORS 539.130(1). Upon that filing, that court is to issue an order for a hearing on the determination, notice of which OWRD is to provide to all claimants. ORS 539.130(2)-(3). Unlike for judicial review under ORS 536.075, for stream adjudications under ORS chapter 539, "[t]he determination of the [OWRD] shall be in full force and effect from the date of entry in the records of [OWRD], unless [stayed by a bond under] ORS 539.180." ORS 539.130(4).

ORS 539.150 governs the court proceedings to review OWRD's determination. It provides in relevant part that "the proceedings shall be like those in an action not triable by right to a jury" and, "[a]t any time prior to the hearing provided for in ORS 539.130, any party or parties jointly interested may file exceptions in writing to the findings and order of determination, or any part thereof, which exceptions shall state with reasonable certainty the grounds and shall specify the particular paragraphs or parts of the findings and order excepted to." ORS 539.150(1). "After final hearing the court shall enter a judgment affirming or modifying the order of the director as the court considers proper, *** [and] [a]n appeal may be taken to the Court of Appeals from the judgment in the same manner and with the same effect as in other cases in equity." ORS 539.150(4).

ORS chapter 539 further provides that, "[w]hile the hearing of the order of the Water Resources Director is pending in the circuit court, and until a certified copy of the judgment, order or decree of the court is transmitted to the director, the division of water from the stream involved in the appeal shall be made in accordance with the order of the director." ORS 539.170. Thus, under ORS chapter 539, unlike under ORS 536.075, the KBA order and the determinations made in that order are not automatically stayed

pending judicial review and are required to be enforced by the OWRD until the circuit court judgment issues. *See also* ORS 539.130(4) ("The determination of the [OWRD] shall be in full force and effect from the date of entry in the records of [OWRD], unless [stayed by a bond under] ORS 539.180.").

Here, petitioners filed petitions for judicial review in Marion County Circuit Court for review of the curtailment orders, which were final orders in other than contested cases. As such, jurisdiction to review those orders typically lies with Marion County Circuit Court under ORS 536.075, which is what that court held in this case. That, however, does not resolve the jurisdictional issue here presented, which is whether the *subject matter* of the petitions herein was nonetheless within the scope of the exclusive jurisdiction of Klamath County Circuit Court, as provided in ORS chapter 539, because petitioners' claims were bound up with the KBA, a proceeding under ORS chapter 539.[10]

We first recognize that that question presents an issue of subject matter jurisdiction that is different from how we would typically discuss subject matter jurisdiction in the circuit courts, which are courts of general jurisdiction. That is so, because the statutes create exclusive jurisdiction by way of a special proceeding in a particular circuit court, instead of by way of a forum that is distinct from the circuit courts. Under ORS chapter 539, once a stream adjudication is initiated, the special judicial review mechanism

---

[10] We note that subject matter jurisdiction is the appropriate lens with which to view this case and not venue. "Jurisdiction refers to a court's authority to act whereas 'venue concerns the particular location where it is appropriate for the court to exercise that authority.'" *Dept. of Human Services v. R. M. S.*, 280 Or App 807, 810, 383 P3d 417 (2016) (quoting *Kohring v. Ballard*, 355 Or 297, 312, 325 P3d 717 (2014)). ORS chapter 539 contains both jurisdictional and venue aspects—that is, it both creates an exclusive judicial process in a particular circuit court for the stream adjudication and provides which circuit court is the appropriate location for that judicial process to occur. *See generally* ORS chapter 539 (providing exclusive process for stream adjudications); *see also* ORS 536.075(7) (removing stream adjudications from circuit court judicial review under ORS 536.075); ORS 539.090 (providing that the proper location for the circuit court determination in a stream adjudication is the county in which the stream is located). This case, however, is not about whether petitioners chose the proper *location* for their claim—an issue of venue. It is about whether Marion County Circuit Court could hear that claim at all—an issue of subject matter jurisdiction—because that claim fell within the exclusive stream adjudication process for which jurisdiction had been established in Klamath County Circuit Court under ORS chapter 539.

that is required by that adjudication process is noticed to occur in a particular, identified circuit court. ORS 539.090. And, once that particular court is identified, subject matter jurisdiction for that stream adjudication can only be in that identified court, ORS 539.130, because, at the same time, the legislature has divested all of the circuit courts of the general judicial review mechanism for agency orders, ORS 536.075(7), with respect to any proceeding under ORS chapter 539. Thus, to state it more simply, under ORS chapter 539, exclusive subject matter jurisdiction for a stream adjudication is vested in a *particular* circuit court once the stream adjudication process under that chapter is initiated.

In this case, the parties appear to generally agree that Klamath County Circuit Court has exclusive subject matter jurisdiction to review the KBA order. We also conclude that that is the correct view under the controlling statutes, as explained above. The more critical issue, and the one on which the parties do not agree, is whether the subject matter of this case, which was initiated in Marion County Circuit Court as a judicial review of an agency order in an other than contested case, nonetheless falls within Klamath County Circuit Court's exclusive subject matter jurisdiction in the KBA. Our case law in the land use context provides useful guidance for answering that question.

There are two parallel review mechanisms in the land use context that can present a subject matter jurisdiction issue akin to the one presented here. Under ORS 197.825, jurisdiction over land use matters is divided between the Land Use Board of Appeals (LUBA) and the circuit courts. LUBA has exclusive jurisdiction to review "any land use decision or limited land use decision of a local government." ORS 197.825(1). The circuit courts retain jurisdiction of enforcement actions to enforce LUBA's orders and for "declaratory, injunctive or mandatory relief," to enforce a comprehensive plan or land use regulation. ORS 197.825(3). "In effect, ORS 197.825 draws a 'jurisdictional line' between 'the land use decision and review process and the enforcement process.'" *Flight Shop, Inc. v. Leading Edge Aviation, Inc.*, 277 Or App 638, 643-44, 373 P3d 177 (2016) (quoting *Clackamas County v. Marson*, 128 Or App 18, 22,

874 P2d 110, *rev den*, 319 Or 572 (1994)). Although not a perfect analogy, that line is similar to the line we must draw in this case—between the exclusive review process for stream adjudications under ORS chapter 539 and review of orders in other than contested cases under ORS 536.075, such as the curtailment orders in this case.

In determining where to draw that line in the land use context, we have held that a circuit court lacks subject matter jurisdiction to decide an enforcement action when the substance of the claim brought involves issues that are subject to an ongoing land use decisional process, or could have been brought in a prior land use decisional process. In *Flight Shop, Inc.*, the defendant had sought and obtained county approval for a refueling station. The plaintiff appealed that approval to LUBA, which remanded for further proceedings. While those proceedings were ongoing, the plaintiff sought enforcement of the land use regulations against the defendant in circuit court seeking injunctive relief and statutory fines on the basis that the defendant did not have required approval for the refueling station, and, separately, to force removal of a canopy built over the fuel tanks, which was not made part of the site plan. 277 Or App at 646, 648. The circuit court determined that it lacked subject matter jurisdiction over the enforcement action, and we agreed.

We explained that the dispute over the approval of the refueling station was pending before the county and could again be appealed to LUBA. As such, it was a land use decision matter for the county or LUBA, but not the circuit court. *Id.* at 646. We noted that the plaintiff's requested remedies of an injunction to prevent defendant from operating its fueling station and an order to remove the fuel tanks "underscore the impropriety of circuit court intervention," because whether or not such remedies would be proper would have required predicting the outcome of the land use decisional process. *Id.* at 646-47. Similarly, we concluded that the circuit court did not have jurisdiction to consider the canopy, because it was built after the defendant obtained a building permit for it—a land use decision that the plaintiff could have challenged when it was issued on the basis that it was not made part of the defendant's site plan. *Id.* at 648.

Similarly, in *Rogue Advocates v. Board of Comm. of Jackson County*, 277 Or App 651, 661, 372 P3d 587 (2016), *rev dismissed*, 362 Or 269 (2017), we concluded that the circuit court lacked subject matter jurisdiction over a claim in a land use enforcement action that sought injunctive relief to halt "illegal" operations. In that case, "[a]t the time that plaintiff filed their enforcement action, the land use decisional process had yet to determine *** which activities were unlawful alterations of a lawful nonconforming use and which of the structures were unlawful for want of a floodplain development permit." *Id.* The plaintiff thus sought to interject the circuit court into determining what was an "illegal" operation, which was part of the ongoing land use decisional process.

Returning to this case, to determine whether Marion County Circuit Court had subject matter jurisdiction to review petitioners' claim, we begin with the allegations and requested relief in the petitions as viewed through the lens of Oregon's water law. Under Oregon's prior appropriation system, regulating water rights depends on the priority date of respective water rights. When there is a shortage of water, the senior water right holder is entitled to receive their entire share of water before the next most senior water right holder can receive their share, and so on. *See Benz v. Water Resources Commission*, 94 Or App 73, 81, 764 P2d 594 (1988) ("[U]nder the law of prior appropriations, *see, e.g.*, ORS 537.120, a senior appropriator who applies water to a beneficial use and thereafter continues to do so holds a water right that is superior to any water right obtained by a subsequent junior appropriator."). This system of water regulation is enforced though OWRD's watermasters, who, among other duties, must "[r]egulate the distribution of water among the various users of water from any natural surface or ground water supply *in accordance with the users' existing water rights of record in the Water Resources Department.*" ORS 540.045(1)(a) (emphasis added); *see also* ORS 540.045(4) ("As used in this section, 'existing water rights of record' includes all completed permits, certificates, licenses and ground water registration statements filed under ORS 537.605 and related court decrees."); ORS 539.170 ("While the hearing of the order of the Water Resources Director is pending in

the circuit court, and until a certified copy of the judgment, order or decree of the court is transmitted to the director, the division of water from the stream involved in the appeal shall be made in accordance with the order of the director."). In accordance with that duty, the OWRD, through the district watermaster, issued the curtailment orders in this case.

In their second amended petition challenging the 2016 order, petitioners asserted a single claim for relief based on the Hyde Agreement, which was attached as an exhibit. That claim for relief alleged, in relevant part:

"20. The [Hyde Agreement], Exhibit B, prohibits the exercise of the water rights that [OWRD], through issuance of the Final Orders, are enforcing.

"21. [OWRD] ha[s] made no investigation of the current flow of the Williamson River on Petitioners' land, or the flow of the Williamson River at the point where it exits Hyde Partnership's land. [OWRD] ha[s] failed to make any determination of whether under the terms of the [Hyde Agreement] the Klamath Tribes and United States have a right to make a call for enforcement of the Order. [OWRD] ha[s] failed to make any determination that [OWRD] ha[s] the authority under the terms of Oregon law and the [Hyde Agreement] to enforce the water rights of the Klamath Tribes and United States in a manner that prevents [petitioners] from diverting and putting to beneficial use one half of the total flow of the Williamson River.

"22. Pursuant to ORS 540.150, OAR 690-240-0080, [governing "rotation agreements"] and the common law, [OWRD is] required to distribute water in accordance with written agreements between water users *** [and] [p]ursuant to those authorities, [OWRD is] prohibited from enforcing the Klamath Tribes' and United States' provisional water rights in a manner inconsistent with the [Hyde Agreement].

"23. [OWRD's] actions in issuing the Final Orders and alleged enforcement of the water rights of the Klamath Tribes and United States in the Upper Williamson River violate the [Hyde Agreement] between the parties and OWRD, was outside the range of discretion delegated to the agency by law; and/or inconsistent with an agency rule, an officially stated agency position, or a prior agency practice;

and/or otherwise in violation of a statutory provision; and/or not supported by substantial evidence."

In their amended petition challenging the 2017 order, petitioners also asserted a single claim for relief based on the Hyde Agreement, which was attached as an exhibit. That petition alleged the identical allegations found in paragraphs 20 and 21 set out above. Additionally, the petition alleged that OWRD's "actions in issuing the Final Orders and alleged enforcement of the water rights of the Klamath Tribes and United States in the Upper Williamson River violate the [Hyde Agreement] between the parties and OWRD, and is not supported by substantial evidence."

Petitioners sought substantively the same relief in both petitions, which was described in the 2016 petition as follows:

"A. A declaration that the Final Orders and the enforcement of the Final Orders violated the terms of the [Hyde Agreement], was outside the range of discretion delegated to the agency by law; and/or inconsistent with an agency rule, an officially stated agency position, or a prior agency practice; and/or otherwise in violation of a statutory provision; and/or not supported by substantial evidence;

"B. A judgment reversing, setting aside, and/or vacating the Final Orders;

"C. An injunction prohibiting [OWRD] from enforcing any call for water to fulfill the United States' provisional water rights, when the effect of the enforcement of those water rights violates, or would violate, the terms of the [Hyde Agreement].

"D. An award of Petitioners' reasonable attorney fees and costs pursuant to ORS 183.497;

"E. And such other relief the Court deems just and equitable."

Petitioners additionally sought in their 2017 petition "[a]n injunction prohibiting [OWRD] from enforcing a call for water to fulfill the United States' water right for minimum elevation levels for the Klamath Marsh."

The core claim in the petitions is that OWRD could not enforce the United States' and Klamath Tribes' water rights according to the terms of those rights in the KBA order, but rather was required to enforce them, if at all, as set out in paragraph B.1.(c) (the no-call provision) of the Hyde Agreement. The relief petitioners sought further lays bare that core claim, because petitioner sought declarations and injunctions prohibiting OWRD from enforcing the United States' and Klamath Tribes' water rights in any manner other than according to the terms of the Hyde Agreement.

That claim, and its requested relief, however, is irreconcilably bound up with the KBA, because it required Marion County Circuit Court to decide whether the Hyde Agreement placed a limitation on the Klamath Tribes' KBA-determined water right claims. The KBA adjudicator had already rejected that notion, concluding that the no-call provision in the Hyde Agreement was "not pertinent to the determination of a water right claim." That decision is currently on review before Klamath County Circuit Court in its review of the KBA order.

That petitioners were asking Marion County Circuit Court to interject itself into the water right determination process under ORS chapter 539 is made more apparent by the statutes that OWRD is required to follow pending the KBA order judicial review process. OWRD, and its water masters, are required by statute to regulate the distribution of water according to the water rights on record and the OWRD's stream determination orders. ORS 540.045(1); ORS 539.170. Outside of a rotation agreement, as provided in ORS 540.150, the statutes do not allow OWRD to regulate the distribution of water according to anything that is not part of the water rights on record (as defined by ORS 540.045(4)) and stream determination orders, of which the no-call provision in the Hyde Agreement was not. Thus, petitioners were calling on Marion County Circuit Court to make water right determinations with respect to the United States' and Klamath Tribes' water rights claims made in the KBA, which it could not do, because the jurisdiction to do so rests solely with Klamath County Circuit Court under ORS chapter 539.

Further, even if petitioners' allegation in its 2016 petition that the Hyde Agreement is a rotation agreement[11] is separately parsed out from their single claim, that allegation does not lead to a different result, because the allegation contains no facts that would bring the claim within Marion County Circuit Court's subject matter jurisdiction, having only made an assertion of law—that the Hyde Agreement is an enforceable rotation agreement. The alleged facts to support that claim can only be found within the four corners of the Hyde Agreement, which was attached to the petition. The text of the Hyde Agreement is plainly not separable from the KBA, whether it is characterized as a rotation agreement or something else.

To begin with, the Hyde Agreement was a filed document in the contested case for petitioners' Claim 33 in the KBA, having the case caption—which was entitled "Stipulation to Resolve Contests"—as the heading for the agreement. The heart of the document, section B, set forth the agreement. As discussed in the fact section, section B.1.(a) set forth the agreement that Claim 33 should be approved by the adjudicator as described in the Hyde Agreement, and section B.1.(b) set forth the agreed limitations on petitioners' exercise of their water right. Those two provisions were incorporated into the KBA order as to petitioners' determined water right claim, which is currently subject to pending exceptions before Klamath County Circuit Court.

Section B.1.(c), also called the no-call provision and the basis of petitioners' claim in this case, provided that it was to be implemented by requesting that the adjudicator adopt a limitation on the exercise of the United States' and Klamath Tribes' Claim 633:

"(c) Claimants' use of their water right upstream of the current north boundary of Claimants' property * * *

---

[11] Again, ORS 540.150 provides:

"To bring about a more economical use of the available water supply, water users owning lands to which are attached water rights may rotate in the use of the supply to which they may be collectively entitled. Whenever two or more water users notify the watermaster that they desire to use the water by rotation, and present a written agreement as to the manner of rotation, the watermaster shall distribute the water in accordance with the written agreement."

will not be curtailed in favor of any senior water right now held or later acquired by the United States or the Klamath Tribes. The United States and the Klamath Tribes agree that they will not place any call on the Williamson River that will result in the curtailment of Claimants' use of water in excess of the principles set forth in paragraph B.1.(b), above. *To ensure implementation of this provision, the United States and the Klamath Tribes hereby request* that the Adjudicator's Findings of Fact and Order of Determination place a condition implementing the principles set forth in paragraph B.1.(b), above, thereby preventing exercise, upstream of the current north boundary of Claimants' property * * * of any rights adjudicated in favor of the United States on behalf of the Klamath Tribes in Claim No. 633. *The United States and the Klamath Tribes also request* that the same provision be placed on any rights adjudicated in favor of the Klamath Tribes with respect to the portion of the Klamath Tribes' Claim No. 612 that incorporates Claim 633 filed by the United States on behalf of the Klamath Tribes."

(Emphases added.) The adjudicator did not incorporate any limiting provision on the United States' and Klamath Tribes' determined claims as requested, and that failure is also currently subject to pending exceptions in Klamath County Circuit Court.

Under the Hyde Agreement, the provisions B.1.(a), B.1.(b), and B.1.(c), were all dependent upon the adjudicator's adoption of those provisions, as provided in section B.4.:

"4.  If the Findings of Fact and Order of Determination issued by the Adjudicator for Claim 33 does not conform to the terms set forth in paragraph B.1., above, the Parties reserve any right they may have to file exceptions to the Findings of Fact and Order of Determination as to Claim 33 in the Circuit Court for Klamath County, and reserve any rights they may have to participate in any future proceedings authorized by law concerning Claim 33."

Section B.4. was adopted by the adjudicator into the KBA order.

Petitioners cannot now attempt to get around the determinations in the KBA order and the ORS chapter 539 review process, and obtain an automatic stay of OWRD's

statutory obligation under ORS 539.170 to distribute water according to the determined claims pending that review process, by seeking to separately enforce in a different forum the provisions in the Hyde Agreement that the KBA order omitted. It is akin to what the plaintiffs in *Flight Shop, Inc.* sought to do when they asked the circuit court to enforce land use regulations against the defendant while the land use decisional process about the disputed land use on the defendant's property was still ongoing. 277 Or App at 646, 648. The circuit court in that case lacked subject matter jurisdiction to do so, and so did Marion County Circuit Court in this case. Whether the no-call provision of the Hyde Agreement is a required limitation on the United States' and the Klamath Tribes' water rights claims, as part of the stipulation to settle contests, is currently part of the ongoing KBA litigation, and it is subject to Klamath County Circuit Court's exclusive jurisdiction under ORS chapter 539. By seeking to have Marion County Circuit Court instead treat the Hyde Agreement as separately enforceable under ORS 540.150 or otherwise, petitioners sought to have Marion County Circuit Court interject itself into that ongoing litigation and decide for itself whether the Hyde Agreement limited the United States' and Klamath Tribes' determined claims.

The remedies sought by petitioners further highlight why Marion County Circuit Court does not have subject matter jurisdiction. Petitioners sought all the same remedies as previously discussed, which sought to place direct limitations on the United States' and Klamath Tribes' determined water rights through an injunction against OWRD from enforcing those determined claims. The determination of those water right claims, however, is within the exclusive jurisdiction of Klamath County Circuit Court.

Because Marion County Circuit Court lacked subject matter jurisdiction over the claim brought by petitioners, we reverse and remand with instructions to dismiss the petitions for judicial review.

Reversed and remanded with instructions to dismiss petitions.